## Blystone *versus* Blystone.

1. Where the parties to a fraudulent or illegal contract have fully executed it, courts of justice will not interfere, but will hold them bound as they find them.

2. A judgment is to all intents and purposes conclusive on all matters which are pleaded or might properly have been pleaded.

3. If one confess a judgment to another with a full knowledge of its fraudulent purpose and without being in any manner induced thereto excepting as a confederate, he cannot be said to be defrauded, for he intended what he did.

4. The common law makes that which is fraudulent in fact void; but in all cases of confederate fraud, its maxim is *in pari delicto, potior est conditio defendentis*.

5. The statute of Elizabeth has nothing to do with cases of confederate fraud; it declares void all contracts intended to delay, hinder or defraud creditors, against the parties intended to be defrauded, but, as between the parties, leaves it as at common law.

6. If parties concoct a scheme to defraud others, and resort to a judgment to effect their object, both having in view the same thing, there is no fraud between them from which either can call upon the court to relieve against.

ERROR to the Court of Common Pleas of *Crawford county*, in which this was a feigned issue to try the validity of a judgment, Isaac Blystone against Frederick A. Blystone, obtained by confession, February 17th 1859, for $1200.

Frederick was the son of Isaac, and had been in partnership with his brother, as C. H. Blystone & Co. In 1858 Isaac bought out Frederick's interest in the firm, and agreed to pay the debts of the firm, or of Frederick. Isaac not being able to pay the debts as they became due, and fearful of being pressed, induced Frederick to confess the above judgment to him, there being nothing due from Frederick to Isaac. On this judgment the property of the old firm was sold by the sheriff, and bought by Isaac for $428.51. Frederick, on March 13th 1863, recovered a judgment against Isaac for $689.64, and under a rule to show cause why the balance of Isaac's $1200 judgment should not be set off against Frederick's judgment against him, a feigned issue, in which Isaac was made plaintiff and Frederick defendant, was directed to try the validity of Isaac's $1200 judgment.

Under the charge of the court (S. P. Johnson, P. J.) there was a verdict for the defendant.

The errors assigned were that the court erred—1. In not charging as requested in plaintiff's point, to wit: "The court is requested to charge the jury, that if they find the judgment was fraudulent, and entered into by plaintiff and defendant to hinder and delay the creditors of defendant in the collection of claims against him, that it is binding upon him in law and the plaintiff is entitled to recover."

Answer: "Not so. Fraudulent contracts and arrangements, so far as executed, will not be disturbed, but the law will not lend its aid to enforce a fraudulent contract on the ground that

parties are equally guilty, and the defendant has no right to complain."

2. In charging, " if the consideration and object was, as is alleged, to hinder and postpone the creditors of C. H. Blystone & Co., of which firm he had been a member, from collecting their debts out of his individual property, it was never a legally valid judgment for any purpose."

3. " But so far as it was not executed or collected, the law will not lend its aid for its enforcement."

4. " It is not a valid judgment and cannot be collected."

*G. W. Hecker*, for plaintiff in error.—A collusive contract binds the parties to it: Stewart *v.* Kearney, 6 Watts 453–455 ; Montefiori *v.* Montefiori, 1 W. Bl. R. 364 ; Sherk *v.* Endress, 3 W. & S. 255 ; Telford *v.* Adams, 6 Watts 429 ; Huey's Appeal, 5 Casey 212. There is no difference between executed and executory fraudulent contracts.

*P. Church*, for defendant in error.—Frederick had no creditors to be hindered, &c.; they had become the creditors of Isaac. He gets Frederick to allow him to use his name and obligation till he shall have time to pay the debts, and now claims to use the obligation for a different purpose. There is a difference between executed and executory contracts. In Stewart *v.* Kearney the fraudulent sale had been executed. In Huey's Appeal the party was not permitted to gainsay his executed deed. Montefiori *v.* Montefiori went on an estoppel. Holman *v.* Johnson, Cowp. 343 ; Smith *v.* Hubbs, 1 Fairfield 71 ; St. John *v.* Benedict, 6 Johns. Ch. R. 117 ; 1 Am. L. Cases 45 ; Nellis *v.* Clark, 20 Wend. 24, s. c. 4 Hill 424 ; Harris *v.* Harris, 9 Dana 317. The Statute of Elizabeth is only in affirmance of the common law; and as between the parties, they are expressly excluded from the statute and left as they stood at common law.

The opinion of the court was delivered, October 26th 1865, by

THOMPSON, J.—There is not much room for dispute about the legal principles governing in cases of confederated fraud, as between the parties to it. The supposed difficulty *here* lies in their applicability to the case in hand. " There is a class of cases," said my brother Woodward, in Miller's Appeal, 6 Casey 478, " where the parties to a fraudulent or even an illegal contract, have fully executed it themselves, in which courts of justice will not interfere to unravel their doings ; but, considering them *in pari delicto*, will leave them bound as they find them: 3 Barr 81 ; 12 Harris 62 ; 1 Jones 212 ; 3 Casey 90." And he adds, what is an important test in cases like this, by saying, a " contract, however, which remains to be executed, which stands in

[Blystone *v.* Blystone.]

need of a decree of a court of justice to enable the parties to reap its fruits, and which is successfully impeached as covinous and fraudulent in fact, is easily distinguished from all such cases (executed contracts), and rests on a foundation of sand."

Was the judgment in this case an execution of the contract or transaction on which it was founded, so as to put it out of the power of the defendant to retrace his steps by alleging the fraudulent purpose of it? I certainly think it was. The pleadings in a suit are said in the elementary books to be the "mutual altercations between the parties." The next step is the trial, and this ascertains which party is right in their altercations. Then follows the judgment, which is the conclusion of the law, and is said to be the end of the law in regard to the controversy. All after that, in execution of the judgment, is ministerial, excepting where it may be judicial in aid of ministerial action. The judgment is to all intents and purposes conclusive on all matters pleaded or which might properly have been pleaded. So in judgments by confession the same principle exists. If one confess a judgment to another, with a full knowledge of its fraudulent purpose, and without being in any manner induced thereto, excepting as a confederate, he cannot in any sense be said to be defrauded, for he knew what he was about and intended what he did. The judgment, therefore, as to him, being without fraud as between him and the party to whom it is confessed, cannot be impeached for fraud. None which the law will reach was attempted to be shown.

The common law makes that which is fraudulent in fact, void; but in all cases of confederated fraud, its maxim is *in pari delicto, potior est conditio defendentis.* Neither party will be aided or relieved against a contract executed by him. The statute of 13 Elizabeth has nothing to do with such cases. It declares void all contracts intended to delay, hinder or defraud creditors, against the parties intended to be defrauded; but leaves it as between the parties as it was at common law; subject only to be affected, if not within the maxim, by actual fraud upon one of the parties. If parties concoct a scheme to defraud others, and resort to a judgment to effect their object, both having in view the same thing, there is no fraud between them, assuredly, of which either can complain or call on a court for relief. Courts will not move to change the condition of the parties any more readily in such case than they would to enforce an executory contract, which as a general rule they will not do. These are the principles of the authorities cited from 1 W. Bl. R. 364; 6 Watts 453; 5 Casey 219; to which many more might be added.

In this case the defendant was indulged with an issue to try the question of fraud in the judgment; fraud between themselves, for no others were party to the issue. The proof, however, fell short of this; it showed that the judgment was confessed by the

defendant to the plaintiff to defraud the defendant's creditors, in which both participated; and this is just where the learned judge erred, for he held, and so charged, that if this was the purpose of the judgment it was "legally invalid for any purpose;" and, "as it was not executed or collected, the law will not lend its aid for its enforcement." It should have been remembered that the law will not lend its aid to relieve a party against the effect of his own fraud, any more than it will aid to enforce fraudulent contracts. It leaves both as it finds them. That the judgment was not *collected* was not the test that the contract out of which it sprung was executory. That was merged in the judgment and concluded by it, and needed not the aid of a court to reach its fruits. Process of execution, which is of course, was all that was needed.

We think in this treatment of the case the learned judge lost sight of the great principle of the case, embraced in the maxim— *nemo allegans suum turpitudinem*—in order to avoid his acts. The very reverse of this was held when the learned judge allowed the proof to be sufficient to relieve the defendant; which showed that he had confessed the judgment to defraud others without having been led into it by the fraud of the party to whom he confessed it. If he was cheated by his own machinery, he cheated himself, and must abide it; but this was not the effect given to his acts in the view the learned judge seems to have taken of them. The effect, unperceived of course by the learned judge, was to give the defendant a chance of escaping the consequences of his own fraud after having tried it, perhaps successfully, on his creditors. This is not our understanding of what should be the proper administration of the law in such cases, as is apparent from what has been already said.

Our conclusion is that the court below erred in holding the judgment to be executory between the parties, and in charging, as we have already pointed out they did, and which is the substance of the second, third and fourth assignments of error. For these reasons the judgment in the issue must be reversed.

We have nothing to say in regard to the proposed set-off of this judgment; that is not before us. If the judgment is not otherwise impeached, it will depend on equitable principles whether it will be a set-off against the defendant's judgment or not. That will be determined at the proper time.

Judgment reversed, and *venire de novo* awarded.