## William B. Jones, Appellant, v. Samuel Shaw.

*Replevin—Title of defendant—Collusive fraud.*

Where, at the time a writ of replevin was issued, the possession was in the defendant under a title that plaintiff cannot impeach without alleging his own fraud, the rule of law leaves the parties where it finds them.

Argued Oct. 5, 1898. Appeal, No. 52, Oct. T., 1898, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1896, No. 365, on nonsuit entered. Before RICE, P. J., REEDER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Replevin for horses valued at $700.

It appears from the evidence that plaintiff alleged having executed certain promissory notes to a certain man which he alleged were, according to a verbal agreement, to be paid for in work, which work the holder of the notes refused to permit plaintiff to perform. The plaintiff fearing that suit would be brought upon these notes, executed a bill of sale for certain horses, which bill of sale, although specifying a consideration of $1,200, was actually without consideration. The horses at the time of the execution of the bill of sale were at board in New Jersey, but were thereafter returned to the plaintiff and remained in his possession and control until the morning of June 24, 1896, when the defendant, without notice, as alleged, went to plaintiff's stables and took away four horses, which are the subjects of this suit. Plaintiff immediately issued a writ of replevin. Defendant pleaded property in defendant. The plaintiff called witnesses who testified that the horses were

in his stable and defendant came there and took them away in June, 1896. Plaintiff also testified that he never sold these horses to defendant, and that he had no knowledge that defendant was going to make an effort to take them away. On the cross-examination of plaintiff, defendant's counsel showed the witness a paper purporting to be a bill of sale covering the horses in question, which plaintiff acknowledged to have executed. Also a note for $500 to the order of Samuel Shaw, the defendant, which plaintiff acknowledged signing. In the notes of testimony, under the cross-examination of the plaintiff, the following entries appear: bill of sale offered in evidence, marked Exhibit A, 4–14–97; note offered in evidence, marked Exhibit B, 4–14–97.

The court entered judgment of nonsuit. Plaintiff appealed.

*Errors assigned* were (1) entry of nonsuit. (2) Refusing to take off same. (3) In entering nonsuit without permitting plaintiff to finish his case. (4) In not permitting plaintiff to prove there was no delivery under the bill of sale, after ruling as follows: "I will permit you to show that there was no delivery."

*Henry K. Fries*, for appellant.—The consideration for the bill of sale absolutely failed. It was part of the agreement at the time that the horses were to be returned to appellant whenever he demanded them and they were actually so returned to his possession, when they were brought from New Jersey. The bill of sale was never consummated and was treated from the time of its execution by both of the parties as a nullity and was void in law.

A long line of decisions recognize that the failure of a consideration will void an instrument under seal: Anderson v. Best, 176 Pa. 500.

The court's attention is called especially to the fact that the bill of sale in this case was not a part of plaintiff's case, and plaintiff's right to recover did not depend upon the bill of sale, which plaintiff contends is either fraudulent or void and of no effect, so that if the bill of sale, which was not offered in evidence by appellant, is left out of consideration, this nonsuit should be taken off as the plaintiff's right to recover would be

undoubted. This is not a case of a judgment fraudulently given passing into the hands of a creditor for an antecedent debt as in the case of Winton v. Freeman, 102 Pa. 366.

*Joseph R. Embery*, for appellee.—It appeared by appellant's testimony and the offers made by appellant's attorney in the lower court that the bill of sale for these horses was executed in order to prevent a creditor of appellant (plaintiff below) "from obtaining his money to the exclusion of other creditors." This certainly was sufficient to justify a nonsuit: Harbaugh v. Butner, 148 Pa. 273 ; Winton v. Freeman, 102 Pa. 366 ; Riechart v. Castator, 5 Binn. 109 ; Evans v. Dravo, 24 Pa. 62.

This part of appellant's offer was clearly bad. And this court has decided that "when an offer is made to prove certain facts, some of which are admissible in evidence, while others are inadmissible, the offer is incompetent as a whole ; and the court is not bound to separate the offer and admit the competent portion of it, although it may do so in its discretion : " Keeler v. Schott, 1 Pa. Superior Ct. 428. See also Smith v. Arsenal Bank, 104 Pa. 518.

Had there been no fraud, the failure of consideration could have been inquired into. But just here the law steps in and says that the intending fraud is a binding consideration : Winton v. Freeman, 102 Pa. 366.

OPINION BY RICE, P. J., November 14, 1898:

This was an action of replevin for four horses. The defendant pleaded property. It appeared on the trial that in August, 1895, the plaintiff,—he being then the owner, and the horses being in the possession of Clark Pettit in the state of New Jersey,—executed and delivered to the defendant a bill of sale under seal. This paper was put in evidence during the presentation of the plaintiff's case, and as the record does not affirmatively show that it was offered in evidence by the defendant we cannot say that he had debarred himself from moving for a nonsuit by injecting his defense into the plaintiff's case. If there was any mistake in the stenographic report of the trial it should have been corrected before the record was brought here.

Taking the record as we find it, it appeared in the plaintiff's case that the title and the possession were in the defendant at

the time the writ issued. To rebut this prima facie evidence of title the plaintiff then offered to prove that there was no delivery of the horses under the bill of sale; that while, ostensibly, the consideration for the transfer was the payment of $700 in cash, for which the plaintiff gave his receipt, and the cancelation of an antecedent indebtedness of $500, represented by the plaintiff's note to the defendant dated June 1, 1895, no cash was paid, and there was no consideration for the note; in short that the whole transaction was a fraudulent scheme to prevent a certain creditor of the plaintiff, who threatened suit, from levying upon the horses, in case he obtained judgment.

As to the allegation that there was no actual delivery under the bill of sale there are two complete answers: First, the court offered to receive evidence of the fact but the plaintiff did not see fit to avail himself of the offer; second, the property being in the hands of a bailee, actual manual delivery was not necessary in order to transfer the title. As to the other branch of the offer it is sufficient to say, that while the bill of sale was fraudulent and void as to the plaintiff's creditors, it was nevertheless good between the parties, at least to the extent of precluding the plaintiff from invoking the assistance of the courts to recover the property from the vendee. " It is settled by numerous decisions that there is no more binding consideration known to the law than the mutual fraud of the parties. The books are full of cases where a party to the fraud has sought relief in the courts from the consequence of his unlawful act, but the decisions have been uniformly adverse to such applications. It is not the province of the law to help a rogue out of his toils:" Winton v. Freeman, 102 Pa. 366; Harbaugh v. Butner, 148 Pa. 273. But, says the plaintiff, " the defendant agreed at the time of the execution of the bill of sale to return the horses to me whenever I should demand them; they were subsequently returned to me " (he does not say by whom), " and remained in my exclusive possession until possession was retaken by the defendant." Unquestionably, if there was a rescission of the sale, the defendant could not retake possession of the horses and set up the bill of sale as a defense to this action. But the facts stated in the offer are insufficient to warrant a finding that there was a rescission.

The secret agreement to return the horses was, evidently, a

part of the fraudulent scheme whereby the plaintiff was to have all the benefits of ownership while his creditors were to be kept at bay by putting and keeping the title in the defendant. This feature of the transaction does not prevent the application of the principle to which we have referred. Assuming that the plaintiff had proved all that he offered to prove—and owing to the irregular manner in which the case was tried we must assume this—the fact remains that at the time the writ of replevin issued the possession was in the defendant under a title which the plaintiff could not impeach without alleging his own fraud. The rule of law in such cases is to leave the parties where it finds them. The rule is founded upon the highest considerations of public policy and its enforcement is calculated to make men honest in their dealings, not only as between themselves, but in respect to the absent, the dependent and the ignorant: Evans v. Dravo, 24 Pa. 62; Winton v. Freeman, supra.

The regular mode of procedure would have been to rule upon the plaintiff's offers of evidence. But the manner in which we have considered the case renders this irregularity immaterial. Upon the case as presented by the plaintiff in his evidence and his offers of evidence he was not entitled to recover.

The judgment is affirmed.