# Binkley *v.* Nolt, Appellant.

*Judgment — Opening judgment — Fraud — Clean hands — Equitable maxims.*

1. He who comes into a court of equity must do so with clean hands.

2. Equity has no relief for a party who in the practice of one fraud, has become the victim of another.

3. A party who seeks to set aside a transaction on the ground of fraud must himself be free from any participation in the fraud, if he desires equitable relief.

4. A judgment entered upon a verdict in a case which is within the jurisdiction of the court, and in which the proceedings are regular on their face, will not be opened upon the application of the party against whom it was entered, where it appears by his own statement that he could have produced evidence at the trial that would have entitled him to a verdict, but omitted to do so pursuant to a secret agreement entered into between himself and the other party, for the purpose of defrauding creditors or other parties.

Argued Nov. 15, 1910. Appeal, No. 76, Oct. T., 1910, by defendant, from order of C. P. Lancaster Co., Aug. T., 1905, No. 10, making absolute rule to open judgment in case of Harry Binkley, administrator of Clara Binkley, deceased, v. Benjamin N. Nolt. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Rule to open judgment entered on verdict.
The opinion of the Superior Court states the case.

*Error assigned* was order making absolute rule to open judgment, and order striking off verdict.

*B. F. Davis*, for appellant.—The petitioner, Harry Binkley, was under the finding of the court and his own petition, a party to the "collusion and fraud." He cannot come into court and invoke its equitable powers when he admits he is guilty of fraud and collusion at any time:

Beck v. R. R. Co., 148 Pa. 271; Pringle v. Pringle, 59 Pa. 281; Hershey v. Weiting, 50 Pa. 240; Allebach v. Hunsicker, 132 Pa. 349; Winton v. Freeman, 102 Pa. 366; Smith v. Kammerer, 152 Pa. 98; Reynolds v. Boland, 202 Pa. 642.

*W. H. Keller,* of *Coyle & Keller,* with him *J. W. Brown,* for appellee.—While the general rule is that a judgment cannot be opened after the term at which it is entered, a clear distinction has always been made where fraud is the ground for opening the judgment: Zeigler's Petition, 207 Pa. 131.

Opinion by Rice, P. J., April 17, 1911:

Benjamin N. Nolt, the appellant, having obtained judgment against Henry Binkley, Sr., the father of the appellee issued a fi. fa. by virtue of which certain personal property was levied upon. Clara Y. Binkely, the wife of the defendant in the execution, claimed the property. In due course a sheriff's interpleader issue was framed in which she was made plaintiff and Benjamin N. Nolt was made defendant, and upon her giving bond with two sureties, which was approved by the court, the chattels were delivered to her. The plaintiff's statement and the defendant's plea thereto were filed on June 17, 1905, and the cause was on the trial list and continued two or three times. In November, 1907, the death of Clara Y. Binkley was suggested, and in due course Harry Binkley, who was her son and the administrator of her estate, was brought in by scire facias and made plaintiff in the suit. After two or three further continuances, the case was called for trial on November 24, 1908, and a verdict was rendered in favor of the defendant for $1,024.45, being the value of the property with interest. On December 12, 1908, pursuant to rule previously entered, the costs were taxed, the counsel for the parties being present, and ten days afterwards the jury fee was paid and judgment was entered on the verdict. Nearly ten months afterwards,

Harry Binkley, administrator, the plaintiff in the issue, presented his petition praying for a rule to show cause why the judgment should not be opened and he let into a defense. The court granted a rule as prayed for, the defendant filed an answer denying many of the material allegations of the petition, depositions were taken and on January 15, 1910, the court made absolute the rule, and also struck off the verdict. This is the order appealed from.

It was alleged in the petition, and evidence was furnished by the depositions tending to show, that the property in question belonged to Clara Y. Binkley, and that there was evidence obtainable then as well as at the preceding trial to establish that fact. This, of course, would not be ground for opening the judgment; but it is alleged that the verdict and judgment were obtained by fraud, and therefore, it is argued, the court had power, even after the term, not only to open the judgment, which was prayed for, but also to strike off the verdict, which was not prayed for. In his opinion making absolute the rule the learned judge summarizes the testimony of the plaintiff in support of the allegation of fraud, and states the corroborating circumstances as follows: "Harry Binkley, Jr., testified that he administered on the estate of his mother at the request of defendant, who promised him a reduction in the price of certain real estate or a cash consideration, if he preferred it, if he would do so, and permit him to obtain a verdict in the interpleader case, with which he could make the sureties on such bond of Clara Y. Binkley pay the value of the property in dispute; that the defendant with a friend whom he secured for that purpose became his sureties on his administration bond; that he employed the defendant's attorney as his attorney at the defendant's suggestion and request; that he employed an attorney, whom he did not know, to appear for him in this case, at the suggestion of the defendant; that he met this attorney in the presence of the defendant, at the office of the defendant's attorney, who sent for him to come there;

that the defendant repaid him the money which he paid to that attorney; that he did not subpœna any witnesses nor offer any testimony at the trial at the suggestion and request of the defendant; and that he refused to have any consultation or communication with the attorneys, whom his mother had employed to try the case, at the suggestion and request of the defendant. The defendant denies all or nearly all of these allegations, and his attorney denies that there was any fraud or collusion, so far as he knew, between the defendant and the plaintiff to obtain the verdict. Harry Binkley's testimony is not corroborated by any other witnesses, but is by a number of suspicious circumstances. These circumstances are that no administrator in the estate of Clara Y. Binkley was necessary except for the trial of this case; that the defendant and a friend whom he secured for that purpose became the plaintiff's sureties on his administration bond; that the plaintiff employed defendant's attorney to administer the estate, and subsequently another attorney who was called to his office by defendant's attorney, to try the case; that he remained away from court when the case was to be tried when the testimony of two witnesses, as well as his own, shows that he knew of witnesses who would support his mother's claim to the property in dispute." It is argued with great force that the circumstances alluded to as suspicious do not corroborate the plaintiff sufficiently to overcome the effect of the defendant's responsive answer and the testimony of him and his witnesses in support thereof. But as we view the case it is not necessary to enter into a discussion of that question. Nor is it necessary to consider the contention of the defendant's counsel that the testimony of the plaintiff is irreconcilable with the sworn statements made by him when he filed his account and when he answered the petition in the orphans' court to require him to give further security. Back of the questions of credibility of witnesses and preponderance of testimony, is the broader question whether a judgment entered upon verdict in a case within the jurisdiction of

the court, the proceedings being regular on their face, ought to be opened upon the application of the party against whom it was entered, where it appears by his own statement that he could have produced evidence at the trial that would have entitled him to a verdict, but omitted to do so pursuant to a secret agreement entered into between him and the other party, for the purpose of defrauding creditors or other persons. It is a maxim that he who comes into equity must do so with clean hands. Thus a party who seeks to set aside a transaction on the ground of fraud must himself be free from any participation in the fraud, if he desires equitable relief. As has been tersely stated, "equity has no relief for a party who, in the practice of one fraud, has become the victim of another:" Hershey v. Weiting, 50 Pa. 240; Reynolds v. Boland, 202 Pa. 642. This principle is of general application, and is enforced nowhere more rigidly than where the equitable jurisdiction of the common-law courts to open their judgments is involved. In Blystone v. Blystone, 51 Pa. 373, it is said: "If parties concoct a scheme to defraud others and resort to a judgment to effect their object, both having in view the same thing, there is no fraud between them, assuredly, of which either can complain or call on a court for relief." This was quoted approvingly in Gill v. Henry, 95 Pa. 388, where speaking of the foregoing and other cases, the court said: "They all proceed upon the idea that the defendant cannot give in evidence his own fraud in defense against his own act, whether it be an absolute deed or a mortgage or a confession of judgment, and no matter how it may be mingled with other arrangements or agreements between the parties." The rule was vigorously restated in Winton v. Freeman, 102 Pa. 366, as follows: "It is settled by numerous authorities that there is no more binding consideration known to the law than the mutual fraud of the parties. The books are full of cases where a party to the fraud has sought relief in the courts from the consequences of his unlawful act, but the decisions have been uniformly adverse to such appli-

cations. It is not the province of the law to help a rogue out of his toils." The same statement of the rule appears in Harbaugh v. Butner, 148 Pa. 273, and Jones v. Shaw, 8 Pa. Superior Ct. 487. In a recent case where a judgment was confessed by a father to his son, either as a gift or to defraud creditors, the court held that it was error to open it after the defendant's death upon the application of his widow and heirs, and declared that "unless there is evidence of intent to defraud the widow of her dower, a judgment confessed to defraud creditors is valid and binding on the party confessing it and on all claiming through him:" Dillen v. Dillen, 221 Pa. 435.

Here the plaintiff is seeking the aid of the equitable powers of the court to obtain a new trial, upon the ground that the verdict against him was obtained through his fraudulent collusion with the other party, and this although he did not make his application until long after the expiration of the term at which judgment was entered on the verdict. While the rule that fraud vitiates everything into which it enters applies to verdicts and judgments, and the equitable powers of the courts on the subject may be administered summarily upon rule, and while the expiration of the term does not necessarily preclude the court from the exercise of these equitable powers (Fisher v. Hestonville, etc., Railway Co., 185 Pa. 602), yet, according to the principles above stated, it will not be exercised, ordinarily, upon the application of a party who was a participant in the fraud, and equally guilty with the other party to the suit. None of the cases cited in the opinion of the learned judge of the common pleas or in the brief of appellee's counsel presents an exception to this general rule. Nor can we see that the mere fact that the party making the application is an administrator makes the case an exception. There would be force in the argument that it ought to do so, if it were clear that the sureties on the interpleader bond, or the creditors and next of kin of Clara Y. Binkley were so far concluded by the judgment that they could not defend and secure their rights by show-

ing in appropriate proceedings that it was procured by fraud and collusion to which they were not parties. But it is quite clear that they were not so far concluded thereby, and therefore there is no occasion to depart from the general rule. Nor, if the creditors or next of kin did not avail themselves of the remedies that the law gave them at the audit of the account of the administrator, would that be ground for setting aside the verdict and judgment and granting a new trial.

The order is reversed, the rule to show cause is discharged, the verdict and judgment are reinstated, and the appellee is directed to pay the costs.