[Civ. No. 3739. Third Appellate District.—June 18, 1929.]

I. M. LEWIN, Respondent, v. THE PIONEER HATCHERY (a Corporation), Appellant.

Fred S. Howell for Appellant.

H. B. Churchill and Bryce Swartfager for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment rendered against the defendant for damages resulting from the loss of a flock of hens which died from the effect of chicken-pox communicated to them from cockerels which were purchased for breeding purposes.

The complaint alleged in substance that the defendant sold and delivered to plaintiff ninety White Leghorn roosters for breeding purposes, representing to him that the cockerels were in good, healthy and virile condition; that plaintiff had no knowledge or information to the contrary, and relying upon these representations as to the condition of health, he placed the roosters with his flock consisting of 2,050 hens, which were theretofore healthy and free from disease; that the roosters were in fact infected with chicken-pox, which soon thereafter broke out among his hens, 1350 of which died as a result of the disease, to plaintiff's damage in the sum of $2,025.

Upon the trial the court found that the defendant "represented to plaintiff that the roosters were in good, healthy and virile condition"; that they appeared to the plaintiff to be healthy and free from disease, and that he had no knowledge or means of ascertaining facts to the contrary, but that in truth the roosters, at the time of delivery, "were infected with a . . . chicken disease known generally as the pox"; that the plaintiff being ignorant of the presence of the disease among the cockerels, and relying upon the defendant's warranty, placed them among his hens, which were theretofore healthy and free from disease; that the plaintiff's hens contracted the chicken-pox from defendant's diseased cockerels, "so that a great number of said hens died therefrom," and that the plaintiff sustained damages on that account as follows: "(A) For loss of hens, $1,622.50; (B) For trips to Santa Rosa . . . , $20.00; (C) For doctoring hens, $112.50; (D) For medicine for hens, $50.00; Total, $1,805.00." Thereupon judgment was rendered in favor of plaintiff for the sum of $1805.

On appeal the defendant contends that the representations did not amount to a warranty; that the evidence does not support the finding that the cockerels were afflicted with pox; nor that the plaintiff sustained a loss of hens from the

disease; that the court failed to find how many chickens actually died from the pox, and that the evidence fails to support a judgment for damages according to the measure thereof required by sections 3313 and 3314 of the Civil Code.

The assurance on the part of the defendant, as an inducement for plaintiff to buy the cockerels for breeding purposes, to the effect that they were in "good, healthy and virile condition" amounted to a warranty, the breach of which would make the defendant liable for damages. (22 Cal. Jur. 957, sec. 41; 38 Cyc. 388; 24 R. C. L. 177, sec. 450.) Mere expressions of opinion as to the fitness of an article, or words of praise and commendation of the character or qualities of animals, do not constitute a warranty. It is, however, not necessary to use the term "warrant" in order to hold a vendor liable for breach of positive assurance as to the fitness of an article or the quality or character of animals. When, however, positive averments are made by the seller for the purpose of inducing the purchase of property, respecting the soundness, health or condition of animals or poultry, which representations are relied upon by the vendee, they will be deemed to constitute a warranty even though it may not appear that the seller intended it as such. (2 Mechem on Sales, p. 1102, sec. 1268; 1 Williston on Sales, p. 384, secs. 202, 210, 405; Benjamin on Sales, 7th ed., 664; *Miller* v. *Germaine Seed Co.*, 193 Cal. 62, 74 [32 A. L. R. 1215, 222 Pac. 817].)

In 3 Sutherland on Damages, third edition, page 2006, section 675, it is said: "If animals sold are warranted sound, and are not so, but have an infectious or contagious disease which they communicate to others, where the parties contemplate their being placed with other stock, the loss not only in respect to the animals purchased, but to others to which the warranted animals communicate the disease, may be recovered, as well as the expense of taking care of and doctoring them." (2 Mechem on Sales, p. 1456, sec. 1825.)

The same principle applies to a breach of warranty as to the health and condition of poultry.

There is ample evidence to support the finding that the cockerels were afflicted with the pox. The plaintiff testified: "I first learned that the cockerels had pox when the inspectors picked out the roosters. That was the third day

after the cockerels had been delivered. . . . The inspectors said the cockerels they examined had the pox. . . . There were 16 or 18 that were not banded, and of these I think about 12 during the first four days, developed the pox.''

. Nor does the record fail to support the finding that a great number of the plaintiff's hens died from this disease incurred from defendant's cockerels. The plaintiff testified regarding this matter: "The roosters had the pox right away the second day. The hens did not develop it until eight or ten days. When the pox broke out among the hens I took out about two or three dozen a day which I kept separate . . . and treated them. . . . We lost 1350 hens through that time. . . . Their average value was $1.50.''

Mr. Himy Lewin, son of plaintiff, testified: "I have a record of the hens that died. . . . I made a daily record of the death of the chickens from the pox. After I came home from school I would go out and bury the chickens, and counted them.''

He then gave the number, which he enumerated from month to month, aggregating a total of 1376 hens which he claimed died from this disease. The evidence is conflicting regarding this result, but on appeal it must be assumed that the trial court accepted this testimony as true.

██ The court failed to find how many hens died as a result of this disease. It is also true that the number of hens which died from the disease was a material issue, for the defendant denied that the plaintiff lost any chickens on account of the pox. Under the provisions of section 956a of the Code of Civil Procedure this court is authorized to adopt adequate findings based upon the evidence, for the purpose of upholding the judgment. Accordingly, it is found upon the evidence above quoted that: "The plaintiff lost 1350 hens of the value of $1.50 apiece, which died from chickenpox incurred from the disease communicated to them from the cockerels which were purchased from the defendant.'' This finding will support the judgment.

██ Finally, the defendant contends there is no evidence in the record to support damages for a breach of warranty according to the measure which is prescribed by the terms of sections 3313 and 3314 of the Civil Code. Section 3313 fixes the measure of damages which will ordinarily follow a breach of warranty as to the quality of personal property.

Special circumstances, however, may warrant the allowance of consequential damages which are the natural result of conditions deemed to have been reasonably within the contemplation of the contracting parties. (22 Cal. Jur., p. 1024, secs. 92–98; *California Press Mfg. Co.* v. *Stafford P. Co.*, 192 Cal. 479 [32 A. L. R. 114, 221 Pac. 345]; 8 R. C. L. 455, sec. 25; 17 C. J. 746, sec. 76.) It is not necessary that the particular subject which resulted in the loss shall have been actually mentioned or discussed, if it sufficiently appears that it was reasonably and necessarily included within the contemplation of the parties. In the present case the record satisfactorily shows that the subject of diseased cockerels was actually considered by the parties at the very time of delivery. The plaintiff testified: ''I took them [the cockerels] out of the coops and handed them out to Mr. Furbee, and Mr. Furbee handed them right back to Mr. Millner [defendant's manager], and I made the remark there that the roosters are scratched and painted with iodine [which, the evidence shows, is used in treatment of pox lesions]. Mr. Millner said, 'O, that's nothing,' . . . 'Don't worry, Mr. Lewin, they were inspected by me very thoroughly. They are all healthy and good.' ''

The appellant contends that since this cause is founded upon an alleged breach of express warranty, the measure of damages is not fixed by section 3300 of the Civil Code, but must find support in sections 3313 and 3314 of the same code, for the reason that the first-mentioned section provides that the damages for a breach of obligation arising from contract is such sum as will compensate the aggrieved party for all detriment proximately caused thereby, ''except where otherwise expressly provided by this code.'' In other words, the appellant contends that the sole measure of damages, either direct or consequential, for a breach of contract must find the support of some provision of the Civil Code; that since the plaintiff has seen fit to rest his cause upon an alleged breach of warranty, he must rely on sections 3313 and 3314 of the Civil Code for the measure of his damages.

■ Section 3313 restricts the amount of damages which may be recovered in the event of a breach of warranty as to the quality of personal property which is purchased for no special purpose, to the ''excess, if any, of the value which the property would have had at the time to which the

warranty referred, if it had been complied with, over its actual value at that time."

This section affords no relief in the present case, for the court made no allowance for the loss of the cockerels. That feature of possible damages is therefore eliminated from consideration.

The appellant argues that section 3314 does not aid the respondent, for the reason that this section relates only to damages resulting from a breach of warranty to manufactured "articles of personal property"; that the word "article" may not be construed to include animate objects such as poultry. Section 3314 provides that: "The detriment caused by the breach of a warranty of the fitness of an article of personal property for a particular purpose, is deemed to be that which is defined by the last section, together with a fair compensation for the loss incurred by an effort in good faith to use it for such purpose."

Limiting the application of this section to manufactured or inanimate articles alone would be an unreasonable and unwarranted restriction. This construction would result in depriving an aggrieved vendee of just and adequate compensation for the breach of a warranty of animate objects of personal property. The term "article of personal property," as it is used in the preceding section of the Civil Code, should therefore receive a more liberal construction. It is not unreasonable to hold that the word "article," as it is there employed, means merely object or thing. Webster defines the meaning of the word as a distinct thing that is specifically pointed out or designated; the subject matter, concern or item referred to. In the sense that it merely means an object or thing belonging to the class of personal property, it may apply with equal reason to either animate or inanimate objects. Webster's Dictionary defines the word "thing" as "whatever may be owned or possessed, as distinguished from persons." The Century Dictionary asserts that this word may apply to either animate or inanimate objects.

We are of the opinion that section 3314 of the Civil Code furnishes authority upholding consequential damages under such circumstances as the one presented in the present case. The latter portion of that section provides that the detriment caused by a breach of warranty as to the fitness

of personal property shall include "a fair compensation for the loss incurred by the effort in good faith to use it" for the purpose for which it was purchased. In the present case the cockerels were purchased for breeding purposes. They were declared to be sound and healthy. The vendee had no knowledge to the contrary. Relying on these representations the plaintiff in good faith placed them with his flock of hens which were free from pox. It is a fair inference from the testimony to assume that the diseased cockerels infected the hens, and thereby caused the death of 1350 of them.

Even though this liberal construction of the phrase "article of personal property" be not accepted, the pleadings would seem to justify a judgment under section 3300 of the Civil Code, based upon fraud or deceit.

It is true that the respondent appears to concede that this case must depend upon the theory of a breach of warranty. But the pleadings do not mention the term "warranty." The complaint quite fully recites facts constituting a cause of action based upon fraud or deceit as it is defined in section 1572 of the Civil Code. Although no intent to deceive was alleged on the part of the vendor, in the absence of a demurrer this was unnecessary. (10 Standard Ency. of Proc., p. 56, sec. 4.) We are therefore of the opinion that the judgment in this case may be reasonably upheld on the theory last mentioned, in which event section 3300 of the Civil Code furnishes the measure of damages.

With the modification of the finding above adopted, the judgment finds ample support in both the evidence and the findings. It is therefore affirmed.

Plummer, J., and Finch, P. J., concurred.