[L. A. No. 13262. In Bank.—May 3, 1934.]

HORACE SESSIONS et al., Respondents, v. HERMAN H. TROTT et al., Appellants.

Franklin W. Peck, Arthur L. Erb and Richard C. Waltz for Appellants.

Rosecrans & Emme and B. R. Rountree for Respondents.

CURTIS, J.—This action was brought by the plaintiffs to recover damages for fraudulent representations made by defendants as to the boundaries of a lot which the defendants conveyed to the plaintiffs in exchange for property owned by the plaintiffs. Plaintiffs and defendants entered into negotiations for the exchange of respective properties owned by each. The property of defendants consisted of lot 49 of tract 9159, upon which an attractive two-story stucco residence worth from $18,500 to $20,000 had been built. Said property was located on Talmadge Street near Los Feliz Boulevard in the city of Los Angeles. Plaintiffs' property was also residence property in Los Angeles. Lot 49 of tract 9159, as shown on the plat of the district in the office of the Los Feliz Knolls tract office, was an irregular shaped hillside lot with an actual frontage on Talmadge Street of 49.89 feet. The west boundary line measured 82.38 feet, the eastern boundary line measured 80.67 feet, and the rear line approximately 82.51 feet. The lot had been landscaped with grass and shrubs and a sprinkling system had been installed. However, through an error of the gardener—it is not claimed that it was deliberately and purposely done by the defendants—a wide strip of the lot adjoining on the west had been landscaped as part of lot 49, and even part of the sprinkling system had been installed thereon. This strip of land of the adjoining lot so landscaped measured 17 feet on Talmadge Street and tapered to 7 feet in the rear. The adjoining lot was vacant and covered with sand and weeds so that it appeared to a casual observer that lot 49 had a frontage of 66.89 feet on Talmadge Street. Photographic exhibits of the house taken from the front and from the rear show that the actual property line cuts across in front of the house and even cuts off a portion of the stepping-stones laid from the curb to the front door, with the result that the house which is a large one is out of proportion to the lot upon which it is built. In fact, the map shows that one corner of the breakfast room is within three feet of the property line. The plaintiffs claimed that, at the time they were examining the property for the purpose of deciding whether they

wished to make the exchange, the defendant, Mr. Trott, as they stood at the rear of the lot, pointed out the west line of the property as being along the line landscaped and indicated a string which marked the line as it was landscaped as being the property line. This testimony was corroborated by a disinterested witness who was also present. These representations were made by the defendant Mr. Trott, and his wife, named as the other defendant, was not present. The defendant denied that he had so indicated the property line, and testified that he had pointed out a poplar tree, which was very close to the actual property line as marking the property line in front. Plaintiffs further testified that they did not at any time prior to the exchange see the tract map in the tract office for the reason that the defendant had asked them not to contact the tract office as he wished, as owner, to conduct the negotiations himself. Two experts testified in behalf of the plaintiffs as to the difference in value between the property as represented by defendants and the actual value of the property. One gave his opinion that the difference in value amounted to $5,625, and the other that it amounted to $6,750. The trial court decided in favor of the plaintiffs, and as a conclusion of law held that they were entitled to recover of the defendants the sum of $3,500. Judgment was accordingly entered. Subsequently, a motion for a new trial was made upon the ground of newly-discovered evidence, and affidavits were introduced by defendants to the effect that one of the selling agents at the tract office had shown to both the plaintiffs the map of the tract in the office prior to the exchange of properties. It would, of course, follow, if this were true, that the plaintiffs were not entitled to recover, since in making the exchange they were aware of the actual dimensions of the lot and did not exchange their property in reliance upon the misrepresentations of the defendant. These affidavits were met with counter-affidavits of plaintiffs denying that they ever saw such map prior to the exchange and affirming that the only time they saw said map was several months subsequent thereto when they first became aware of the fraud practiced upon them. The motion for a new trial was denied.

Defendants appeal from the judgment so entered upon the following grounds: (1) That the trial court erred in

failing to find the plaintiffs were injured by the misrepresentations or the amount of damage suffered by them, (2) that the judgment was excessive, and (3) that the trial court erred in denying their motion for a new trial.

It is true that the findings are defective in that there is not any finding as to injury to plaintiffs, or as to the amount of damages suffered by them, which were material issues. There are findings, however, against defendants as to wilful and fraudulent representations made by defendant Trott to the plaintiffs, and the belief of the plaintiffs in such misrepresentations and their reliance upon them. And the conclusion of law, as before noted, is to the effect, ''That the plaintiffs are entitled to recover of and from the defendants the sum of Three Thousand Five Hundred ($3,500) Dollars, together with their costs of suit.'' It is apparent that the trial court through inadvertence failed to make a finding to the effect that the plainntiffs were injured by the misrepresentations of the defendant, and to embody in the findings the statement found in the conclusion of law that the damages amounted to $3,500. Under section 4¾ of article VI of the Constitution and section 956a of the Code of Civil Procedure, this court is empowered to make findings of fact in addition to those made by the trial court. Prior to the enactment of this constitutional provision and the code section in 1927, it was the rule that if the trial court failed to find upon a material issue, the appellate court had no option but to reverse the judgment and send the case back to the trial court. Needless to say, the authorities decided prior to these enactments are all to that effect. In an effort to expedite justice, section 4¾ of article VI of the Constitution, and section 956a of the Code of Civil Procedure were enacted with the primary purpose of abrogating the rule that when the court failed to find upon a material issue the decision was against the law and the judgment or order was required to be reversed. (*Tupman* v. *Haberkern*, 208 Cal. 256 [280 Pac. 970].) Since their enactment there are numerous authorities upholding the exercise of this power. (*Lewin* v. *Pioneer Hatchery*, 99 Cal. App. 473 [278 Pac. 902] ; *Allee* v. *Shay*, 92 Cal. App. 749 [268 Pac. 962] ; *Kirk* v. *Culley*, 202 Cal. 501 [261 Pac. 994] ; *Linberg* v. *Stanto*, 211 Cal. 771 [297 Pac. 9, 11, 75

A. L. R. 555].) We are satisfied that this is a proper case for the exercise of such power. In the case of *Linberg* v. *Stanto, supra,* the trial court failed to expressly find as to the damages suffered by virtue of plaintiff's injuries in an automobile accident, but, as a conclusion of law, ordered judgment to be rendered against defendant in the sum of $1509. This court refused to reverse the judgment, saying: "It is well settled in spite of the fact that section 633 of the Code of Civil Procedure provides that facts and conclusions must be separately stated, that a finding may be regarded as one of fact, although mistakenly placed among the conclusions of law." In pursuance, therefore, of the power conferred by said code section, we hereby find that the plaintiffs herein were damaged in the amount of $3,500. And from the record before us, there can be no other conclusion but that plaintiffs were injured by the false and fraudulent representations of the defendant, and we hereby find: "It is true that plaintiffs suffered injury by reason of the false and fraudulent representations of the defendant Trott as to the property line of said lot." It may be argued in reference to a hypothetical case that as damages for deceit in the sale of property are the difference between the actual value of the property and its value as it has been represented, it is conceivable that, notwithstanding the deceit practiced by a vendor and the reliance by the vendee upon the false representations made, the actual value may turn out to be as much or more than it would have been had the representations been true. It will suffice to say that such a hypothesis is conclusively contradicted by the record before us. The photographic exhibits in the case demonstrate beyond cavil that plaintiffs were injured in failing to receive as large a lot as that which they had a right to expect they would receive.

These photographic exhibits also demonstrate that the damages suffered by plaintiffs were considerably greater than the mere area of the strip would indicate. As before noted, the exclusion of the 17 feet frontage from the lot has the result of making the house seem too large for the lot, and the lot instead of being practically rectangular in shape, is in fact a queer irregular shape. As before indicated, one expert, a court appraiser, testified that the

difference in value amounted to $5,625, and the other expert, a real estate broker, testified that the difference amounted to $6,750. The defendant Trott had testified that the difference would not amount to more than $200. The property was viewed by the trial judge, evidently with the consent of the parties, and as indicated by the conclusion of law, it is apparent that in his opinion the difference in value lay somewhere between the estimate of the experts and the opinion of Trott, or $3,500. We are satisfied that $3,500 is a fair estimate of the damages suffered by plaintiff.

It should perhaps be pointed out that the damages in this case are made up of only one item, whereas in the case of *James* v. *Haley*, 212 Cal. 142 [297 Pac. 920], relied upon by appellant, several items of special damages were pleaded. The decision of the latter case that the appellate court would not adopt a conclusion of law to the effect that the plaintiff was damaged in a certain sum as a finding of fact, therefore, is not decisive of this case. The court there had no way of segregating the various items of special damages, and moreover, as pointed out in the opinion, it developed that three of the items of damages were not suffered by plaintiff, suing in his individual capacity, as an individual, but were losses suffered by a partnership of which plaintiff was a member. As the plaintiff as an individual was not entitled to recover for damages suffered by the partnership, a segregation of the items would have been imperative, and the court properly refused to take over the duties of the trial court.

The motion for a new trial was heard and determined by the same judge who had presided during the trial of the case. The showing of defendants that due diligence had been used in an attempt to procure the testimony of the salesman at the tract office is very weak. Despite the fact that defendant Trott must have been aware that salesmen were employed at the tract office, the only person he interrogated prior to the trial of the case was the man in charge of the office, and apparently he did not request the manager to ascertain whether any of the salesmen had any knowledge of the affair. Evidently the trial judge was of the opinion that even if the testimony set out in the affidavits presented by defendants were produced upon a new trial,

his decision would be the same. We find no abuse of discretion.

The judgment is affirmed.

Preston, J., Waste, C. J., Shenk, J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.