[L. A. No. 16276.    In Bank.—October 11, 1937.]

H. W. EVERTS, Respondent, v. SUNSET FARMS, INC. (a Corporation), et al., Appellants.

Jud R. Rush and Don C. Bitler for Appellants.

Louis Ferrari, A. S. Goldflan, E. S. Layman, Hickcox & Provence, Cullinan, Hickey & Sweigert, Cushing & Cushing and Clarke & Bowker for Respondent.

STURTEVANT, J., *pro tem.*—In an action in the nature of a creditor's bill the trial court caused a judgment to be entered in favor of the plaintiff as assignee of the Bank of America. The defendants appealed and have brought up typewritten transcripts. After all briefs had been filed the plaintiff served and filed a notice of motion to dismiss or affirm. His motion was duly presented and it was submitted together with the appeal on its merits. The motion so made was prepared with much care and skill and it should have been granted because the record on appeal was, by the defendants, made in violation of the provisions of certain statutes and of several rules of this court of long standing governing the preparation of records on appeal. But, in view of the conclusion we have reached as to the appeal on its merits, we will not have occasion to consider the motion.

The complaint was very full and complete. The answers put in issue nearly all the allegations contained in the complaint and set forth several separate and additional defenses. The trial court with meticulous care found on each and all

of the issues. All of the allegations contained in the complaint were found in favor of the plaintiff. The points made by the defendants include many attacks on those findings claiming they are not sustained by the evidence. Before taking up each one of the points made by the defendants we will state a general outline of the controversy. Some years prior to the commencement of this action Will S. Fawcett, hereinafter referred to as Fawcett, commenced farming operations in the Imperial Valley. Later he caused a corporation, the Will S. Fawcett Co., hereinafter referred to as the Fawcett Co., to be formed and transferred to it many of his assets and thereafter he did business through said corporation. He was the president thereof. The Fawcett Co. was a stock corporation and nearly all of the stock was held and controlled by Fawcett. Affairs so progressed that on December 31, 1930, Fawcett held assets which he valued at $972,522.68. The Fawcett Co. held assets which Fawcett valued at $691,887.45. The said assets of Fawcett included his holdings in the Fawcett Co. Fawcett and the Fawcett Co. each held a large block of stock in the Transamerica Corporation. At the same time Fawcett owed the Bank of America, the assignor of this plaintiff, on several notes $250,000 and the Fawcett Co. owed sums aggregating over $690,000. Later matters so developed that Fawcett and the Fawcett Co. became aggrieved of and concerning certain financial transactions had with the Bank of America over and concerning the purchase by the former of shares of stock in the Transamerica Corporation and formed the opinion that they had a cause or causes of action against the Bank of America. At about the same time the Bank of America was demanding that the notes it held should be taken up. When affairs so stood Fawcett and the Fawcett Co. caused to be formed Sunset Farms, Inc., and conveyed to the latter some of their assets, and conveyed or assigned to others nearly all of the rest of their assets. The Bank of America assigned to plaintiff its notes. He sued thereon in actions 15387 and 15388 and recovered judgment against the makers. He then took out writs of execution, caused them to be levied on the assets of Fawcett and the Fawcett Co. Having applied the proceeds obtained from such levies the plaintiff took out *alias* writs of execution, caused them to be levied, and they were returned endorsed *nulla bona*. There was then owing by the Fawcett Co. $135,116.23 and by Fawcett $266,527.87. The

plaintiff then commenced this action against the Sunset Farms, Inc., Will S. Fawcett, Warren Currier, and Don C. Bitler. Said individuals constitute the board of directors of said corporation.

In what follows we have not attempted to set forth all of the evidence in a transcript containing 1500 typewritten pages. But, in support of the judgment, we have set forth some of the salient facts contained in the record and we may add there are other facts reinforcing the facts we have set forth.

1. The trial court made findings that the Fawcett Co. was the *alter ego* of Fawcett, and that the Sunset Farms, Inc., was the *alter ego* of the Fawcett Co. and of Fawcett. The defendants claim those findings are not supported by the evidence. They quote no evidence, cite no authority, and make no argument in support of the point. An examination of the record discloses there was ample evidence to support said findings, and if the findings had been otherwise they would have been against the clear weight of the evidence.

2. The plaintiff alleged and the trial court found that the transfers made by the defendants were not followed by an immediate and continued change of possession, were made to delay and to defraud their creditors, and were made when the defendants were insolvent and in contemplation of insolvency. He pleaded, not a part of, but all of the provisions of sections 3439, 3442, and the first paragraph of section 3440 of the Civil Code. Conservatively he claims his complaint pleaded four different causes of action. We think it pleaded more. He proved each element of each of the several causes of action so alleged. The defendants contend that he did not prove some of those causes of action. That claim is not well founded. On the evidence quoted by the defendants, their claim has some support. But they do not set forth the evidence which is against them.

3. The plaintiff alleged and the trial court found that the conveyances and transfers to the defendants were made to delay and to defraud the creditors of Fawcett and the Fawcett Co. and the defendants attack those findings as not being supported by the evidence. We find no merit in the attack. The plaintiff alleged that the transfers were made with intent to delay the creditors of the transferors. (Civ. Code, sec. 3439.) When Fawcett was examined as a witness

he, in effect, testified that such was the fact. Furthermore, there were numerous facts developed which clearly showed such to be the truth.

4. That the transfers were made to defraud the creditors of the defendants is shown by the record. The defendants do not set up all of the evidence and they cannot expect this court to do so. We think it is sufficient to state that a most complete camouflage was set up. That was done by creating the Sunset Farms, Inc. It was so created, organized, and operated that no one who did not hold common stock could see inside. Inside, all was under cover. Even its cash was not banked, but certificates of deposit were bought and held for surrender at such times and for such purposes as the owner saw fit. Holdings were misnamed. Holdings in the Transamerica Corporation (itself solely a holding corporation), were entered on the records of Sunset Farms, Inc., as "Street stock". The facts recited in this paragraph, read in connection with the other facts recited by us in this opinion, clearly show the transfers were made with the intent to defraud the creditors of the transferors, and, in particular, to defraud this plaintiff and his assignor.

5. The plaintiff alleged and the trial court found that the transfers to the defendants were not accompanied by an immediate delivery and followed by an actual and continued change of possession. As to a large part of the personal property, the evidence clearly showed no change of possession whatsoever. The defendants do not specially call our attention to any exceptions.

6. Again the plaintiff alleged and the trial court found that at the time the transfers were made the transferors were insolvent and in contemplation of insolvency and that the transfers were made voluntarily and without a valuable consideration. The defendants attack the entire finding. We find no merit in the attack. It is an admitted and uncontroverted fact that the transfers were made voluntarily. It is an admitted and uncontroverted fact that the transfers of farm equipment to the Sunset Farms, Inc., were in exchange for shares of stock in that corporation. Therefore Fawcett merely transferred his money from one pocket to another. The Fawcett Co. leased its lands to the Sunset Farms, Inc. The leases contained such covenants that qualified witnesses, familiar with the agricultural industry in the neighborhood where the lands were located, testified that

to the lessor said leases were of no value. Moreover, each lease was, in legal effect, a lease from Fawcett to himself. A block of 44,435 shares of stock of Rainbow Oil Co., valued by Fawcett at $190,240, was transferred to him by the Fawcett Co. for $15,000 and the release of his claim for $131,000 against the Fawcett Co. He then sold the stock to his son-in-law at $1 per share and took the note of the latter. The note, Fawcett testified, was paid but he could not state what he did with the money. He said he did not bank it. Transfers to the attorney for the transferors were made of properties of the value of $170,000 for a consideration of services rendered and to be rendered. The attorney had already been paid large sums. The trial court had the power to place a value on such services. On the evidence introduced the trial court was justified in finding that the two transfers just mentioned were made without any consideration.

7. That, after the transfers had been made, both Fawcett and the Fawcett Co. were insolvent is evidenced by letters written to the Bank of America and by the fact that the sheriff returned to the plaintiff his writs of execution with a return endorsed thereon *"nulla bona"*. That such return squared with other facts is evidenced by the admission of the defendants that all of their remaining assets consisted of claims for damages against the Bank of America et al., which we have mentioned and will later consider in greater detail. In conclusion on this point it is sufficient to state that on the record before it the trial court had the power to determine said claims were a myth and of negligible value, if they had any value whatever. Finally, as we have shown above, the findings based on other allegations support the judgment even though the findings on insolvency were wholly unsupported.

8. In attempting to collect the judgments rendered in his favor in the actions based on the promissory notes assigned to him, the plaintiff levied on 5,884 shares of the preferred stock of Sunset Farms, Inc., held by the Fawcett Co. Later a sale was had and the plaintiff purchased and became the owner. In their answers the defendants set up such facts and claimed, and now claim, that the plaintiff confirmed and ratified the acts of the defendants and is estopped to set forth and enforce the facts pleaded in the instant action. As to the nature of said stock the plaintiff

had no knowledge at the time of his purchase. Later he learned that the Sunset Farms was incorporated under the laws of the state of Nevada; that under the laws of said state and the terms of the certificates said stock had no voting power; that the dividends on the preferred shares were not cumulative; that such shareholders had no right to inspect the books of the corporation; that the entire control of the 2,100 shares of common stock was held by Fawcett or his agents and for which only $2,100 had been paid. However, he later learned each of said facts to be the truth and that Sunset Farms, Inc., was but the *alter ego* of Fawcett and the Fawcett Co. During the trial he tendered back the stock and deposited it with the clerk of the trial court for the account of the former owner. ■ Furthermore, as we have already shown above, the transfers were in fraud of creditors. They were void and not merely voidable. (*Scholle* v. *Finnell,* 166 Cal. 546 [137 Pac. 241].) They were in contravention of the statute and public policy (Civ. Code, secs. 3439 and 3442; Pen. Code, sec. 531), and, as to such transfers, there cannot be a legal ratification and such facts do not give rise to an estoppel. (*Reno* v. *American Ice Machine Co.,* 72 Cal. App. 409 [237 Pac. 784].)

■ 9. After the plaintiff had introduced evidence sustaining the allegations contained in his complaint he rested. The defendants made motions for a nonsuit. Asked if they cared to argue the motions they stated they did not. The trial court denied the motions. At this time the defendants assign those rulings as error. As will appear from what has been said above, in our opinion the plaintiff had made a *prima facie* case. The court did not err in denying the motions.

■ 10. The defendant Fawcett had commenced two actions against the Bank of America et al., and the Fawcett Co. had commenced two other actions against the same defendants. All of said actions had been brought and, at the time of the trial in the instant case, they were pending in the Superior Court in and for the County of Los Angeles. Each action named many defendants. In each action the plaintiff sought actual damages and punitive damages. At different times during the trial the defendants asked that the trial be continued until said actions in Los Angeles had been determined. The motions were denied. The record shows that action 357726 purported to be a claim for damages for

fraud and deceit perpetrated by many defendants inducing Fawcett Co. to refrain from selling Transamerica stock. Action 357725 was the same except it alleged Fawcett was so induced. Action 359699 was based on a claim that Transamerica stock was fraudulently transferred to Fawcett Co. Action 359700 was the same except the alleged fraud was practiced on Fawcett. Before the trial of this case two of said actions had been dismissed. (Code Civ. Proc., sec. 581a.) Which actions had been dismissed this record does not show. Nor does it show a single issue in common between this action and the two actions that had not been dismissed. No cause is shown why said last-mentioned actions cannot be fully tried and determined without reference to the trial in the instant case. The defendants claim error was committed. They cite and rely on *Robinson* v. *El Centro Grain Co.*, 123 Cal. App. 567, 573 [24 Pac. (2d) 554]; *Eckert* v. *Graham,* 131 Cal. App. 718, 721 [22 Pac. (2d) 44]; 5 Cal. Jur. 985. Those authorities are not in point. They deal with actions having at least some issues in common. Fawcett and Fawcett Co. can proceed with the trial of the Los Angeles cases, recover any judgments to which they are entitled, and enforce them. The trial and determination of the instant case did not in any manner prejudice any rights which the defendants have in said Los Angeles actions. The trial court did not err in denying the motions for a continuance.

11. The plaintiff took the deposition of the attorney for the defendants, but he did not sign it. The defendants called these facts to the attention of the trial court and asked a continuance until the deposition could be signed and then offered in evidence by the defendants. Their request for a continuance was denied and they assert that ruling was error. We think it was not. They showed no facts to the trial court and have shown no facts to this court from which it can be ascertained said deposition contained a word that was material in the trial of this case. It is patent the trial court did not commit error in refusing a continuance.

12. During the course of the trial, for the purpose of showing the fraudulent intent of the defendants in making transfers to Sunset Farms, Inc., the plaintiff introduced evidence of other transfers made by defendants of its other assets to other persons. Claiming such evidence was on

issues not presented by the pleadings, the defendants asked a continuance for the purpose of enabling them to gather and present evidence meeting the evidence above mentioned. That motion was also denied and the ruling is assigned as error. But we see no error in the ruling. The plaintiff was clearly entitled to prove any fact showing or tending to show the fraudulent intent of the defendants in making the transfers which were under attack and the plaintiff's complaint clearly advised them of his contentions. The defendants should have gone to trial duly prepared to meet the issue so tendered.

13. The defendants' points 8, 9, 10 and 11 are stated, but no part of the record is quoted, no authorities are cited, and no argument is set forth in support of any one of said points. Under such circumstances a court of review will not search a record for the purpose of finding something on which to base an order of reversal.

14. The defendants state that the trial court erred in denying certain offers of proof. They quote the record showing the offers. Every one was an offer of opinion evidence on matters not capable of proof by such evidence. We have read each offer. We find no error in the refusal of each and all of them.

15. As stated above, we find no error in defendants' assignments numbered by us 10, 11, 12 and 14. Conceding, solely for the purposes of this decision, that we are mistaken as to any one of said assignments, still the judgment may not be reversed because the defendants have not shown any one of said rulings so attacked by them was prejudicial in any respect, or that anything has been done or omitted that purports to show a miscarriage of justice.

The judgment appealed from is affirmed.

Waste, C. J., Curtis, J., Edmonds, J., and Nourse, J., *pro tem.*, concurred.