## Winton *versus* Freeman.

The maker of a judgment note, regular upon its face, but given to the payee without consideration, for a fraudulent purpose, cannot set up as a defence, in an issue to try the validity of a judgment entered on the note and opened by the court, that the plaintiff in the judgment took the note from the payee with full knowledge of the fraud, as collateral security for an antecedent debt.

February 19th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, and STERRETT, JJ. GREEN and CLARK, JJ., absent.

[Winton v. Freeman.]

ERROR to the Court of Common Pleas of *Lackawanna county*: Of January Term 1882, No. 399.

Feigned issue, wherein W. W. Winton, to the use of the Second National Bank of Scranton, was plaintiff, and Oscar F. Freeman was defendant, to determine the validity of a judgment entered upon a judgment note given by Oscar F. Freeman to C. W. Freeman and assigned to the plaintiff. The judgment was opened by the court, and the defendant let into a defence.

On the trial, before HANDLEY, P. J., the following facts appeared:—In 1877, C. W. Freeman, a jeweler in Scranton, being embarrassed and pressed by his creditors, arranged with his cousin Oscar F. Freeman, who was a blacksmith, to assign to him his stock of goods, which he had appraised at $20,000, or $25,000, Oscar to give four judgment notes for $2,500 each, payable at different dates. It was agreed that C. W. Freeman should remain in possession and continue to attend to the business. It was proved that C. W. Freeman's intent in making this arrangement was to hinder and delay his creditors. Oscar F. Freeman knew all the circumstances, but there was some conflict of evidence whether he was aware that the scheme was actually fraudulent. The transaction was consummated and the notes given.

Oscar and C. W. Freeman then went to W. W. Winton, president of the bank, plaintiff, and informed him of the transaction and C. W. Freeman then assigned one of the notes given by Oscar, as collateral to his indebtedness to the bank of $1,600. Winton admitted these facts, but denied knowledge of the fraudulent character of the transaction. He testified, "I ascertained from Oscar F. Freeman that he was not a jeweler, and asked him why he went into it. He said he had a young man, a relative or friend, he wanted to put in there and have him learn the business, and under those considerations I took the note and gave a receipt."

Winton then entered judgment on the note, and assigned the judgment to the bank.

About a week later, Oscar F. Freeman (as he testified) was advised by counsel that the transaction was a fraud, and, becoming alarmed at his position, he arranged with C. W. Freeman to "trade back," and to cancel the notes. Three of them were cancelled, and they went to Winton, to get back his note. Winton, without informing the Freemans that the note had been entered in judgment, told Oscar not to worry, that he would never trouble him, but he did not deliver the note, nor expressly agree to do so. The bank afterwards issued execution on a judgment against C. W. Freeman, under which the stock of jewelry was levied upon. C. W. Freeman afterwards

[Winton v. Freeman.]

became a bankrupt and was discharged; the bank also became insolvent and passed into the hands of a receiver.

The court, in answer to points, and in the general charge, instructed the jury, in substance, that if they found from the evidence that the bank, or Winton its president, had actual knowledge of the fraudulent character of the transaction, at the time he took the note as collateral; or if Winton took the note not knowing of the fraud, and afterwards, on learning the nature of the transaction, agreed to cancel it, but refused to fulfill such agreement, the verdict should be for the defendant. Further, that if the jury found that the plaintiff knew of and consented to the rescission of the fraudulent sale, such consent showed a failure of consideration for the note, and was an implied agreement to surrender it, and the verdict should be for the defendant.

Verdict "that the judgment in controversy is fully paid and satisfied," and judgment thereon for the defendant. The plaintiff took this writ of error, assigning for error, the instructions of the court as given, in substance, above.

*A. D. Dean*, for the plaintiff in error.—The jury found that the defendant was a party to the fraud, of which the making of the judgment note was a part; he has, therefore, no standing, in this equitable proceeding, to set up want of consideration or failure of consideration as a defence. The judgment note, however fraudulent in its inception, is valid between the parties and privies. The note being valid on its face, the bank (even if it took it with knowledge of the fraud), did not, in entering judgment on it, require the aid of the fraudulent transaction, and the defendant cannot now set it up. Even if the defendant had proved an agreement by the bank to cancel the note, he would have been in no better position, for that would have been simply another form of equitable defence, based on the fraud, and therefore inadmissible: Hendrickson *v.* Evans, 1 Cas. 441; Blystone *v.* Blystone, 1 P. F. S. 374; Hershey *v.* Weiting, 14 Wr. 244; Evans *v.* Dravo, 12 Har. 63.

*F. L. Hitchcock* ( *Ward & Horn* with him), for the defendant.—The defendant presented several complete grounds of defence: 1. He was not a party to the actual fraud in the first instance, and any constructive fraud was purged and condoned by prompt rescission of the agreement, as soon as he discovered its true character; and the bank, by consenting to the rescission, and by issuing execution against the goods as the property of C. W. Freeman, became bound to cancel the note. 2. Failure of consideration. 3. Admitting the fraud, the bank knew of it, and being *in pari delicto*, has no right so invoke the aid of a court,

[Winton v. Freeman.]

to enable it to recover on the note by judgment and execution. 4. The indebtedness of C. W. Freeman, for which the note was taken as collateral, has been fully satisfied by his discharge in bankruptcy. There was ample evidence to sustain the verdict.

Mr. Justice Paxson delivered the opinion of the court, March 26th 1883.

This was an issue in the court below to test the validity of a judgment entered upon a note given by Oscar F. Freeman, defendant in error, to C. W. Freeman, and by the latter assigned to W. W. Winton for the Second National Bank of Scranton. The bank claimed to hold it as collateral for the indebtedness of C. W. Freeman.

The note was one of a series of four notes of $2,500 each, and it was not denied that they were collusively given to hinder and delay the creditors of C. W. Freeman. After the note in controversy had been transferred to the bank the two Freemans became alarmed at the possible consequences of the fraud, and as far as was in their power, traded back, to use their own expression, and three of the notes were surrendered to Oscar F. Freeman. The bank, however, did not surrender the note in controversy, and the defendant applied to and obtained a rule in the court below to open the judgment, and this issue was framed to try the question of its validity. The jury under the rulings of the court returned a verdict for the defendant.

It is settled by numerous authorities that there is no more binding consideration known to the law than the mutual fraud of the parties. The books are full of cases where a party to the fraud has sought relief in the courts from the consequences of his unlawful act, but the decisions have been uniformly adverse to such applications. It is not the province of the law to help a rogue out of his toils. The rule is to leave the parties where it finds them, giving no relief and no countenance to contracts made in violation of statutes : Hershey v. Weiting, 14 Wright 240 ; Evans v. Dravo, 12 Harris 62. It follows that the defendant would have no defence to this note as against C. W. Freeman the obligee or payee. The learned judge of the court below, however, was of opinion, and so instructed the jury, that if the bank had knowledge of the fraud and afterwards took the note, it became a party to the fraud and could not recover. The fallacy of this ruling is obvious. The note is good as between the parties, for the reason that the maker cannot set up his fraud as a defence. If he cannot set it up against the payee, neither can he set it up against the bank, and the inquiry whether the bank had knowledge of the fraud was wholly irrelevant.

Nor does the question of a failure of consideration arise in

6 Outerbridge.—24

the case. There never was any bona fide consideration given for these notes. The transaction was a fraud, the object of which was to hinder and delay the creditors of C. W. Freeman. There never was a delivery, actual or constructive, of the goods for which the notes were supposed to be given, nor was it intended that there should be. Had there been no fraud, the failure of consideration could have been inquired into. But just here the law steps in and says that the intended fraud is a binding consideration, and that although Oscar F. Freeman received no benefit whatever for the note, he cannot be allowed to impeach it on that ground. This may seem hard, but it is just. The rule is founded upon the highest considerations of public policy and must be sternly enforced in order to keep men honest.

If the bank had agreed to the rescission of the arrangement between the Freemans, and had cancelled or surrendered the note, the case would have been different. But it did neither. There was no evidence to submit to the jury that it surrendered the note, or agreed upon a sufficient consideration to do so. The jury should have been instructed to find a verdict for the plaintiff.

Judgment reversed and a venire facias de novo awarded.