[Civ. No. 7453. First Appellate District, Division Two.—April 10, 1931.]

M. GLEESON, Respondent, v. B. J. DUNN, Appellant.

348

Arthur A. Hyman, and Harold B. Haas for Appellant.

Robert E. Hatch and Rudolph J. Scholz for Respondent.

STURTEVANT, J.—As the assignor of Oscar R. Thayer, an architect, the plaintiff commenced an action against the defendant to recover for the services of said architect. The defendant answered and a trial was had before the trial court sitting without a jury. The court made findings in favor of the plaintiff and from a judgment entered thereon the defendant has appealed and has brought up typewritten transcripts.

In the first count of his amended complaint the plaintiff pleaded *in haec verba* his assignor's contract of employment. He also set forth a common count for the reasonable value of the services. The defendant in his answer interposed numerous denials and also some affirmative matter. The affirmative matter was to the effect that there was a collateral agreement that the contract of employment was to take effect only on the condition that the defendant should first secure the title to the property described in plaintiff's amended complaint.

■ The defendant contends that the rulings of the trial court on the admission and rejection of evidence prevented him from proving his affirmative defense. This contention is based on the following rulings. When the plaintiff was on the stand the following proceedings were had: "Mr. Walsh: Q. Was there any conversation at that time leading up to this contract? Mr. Scholz: I object to that. Any oral conversation leading up to the contract is incompetent, irrelevant and immaterial. The Court: Sustained. Mr. Walsh: Now, if the Court please, before I go any further, I want to state my position. One of our defenses to this action, if your Honor please, is that this contract never came into effect, because there were certain conditions precedent to take effect before the contract became binding. We are not trying to alter the terms of the written instrument. We are showing, as a matter of fact, that the contract never came into existence. Now, I would like to lead up to that. The Court: Why, it seems to me that you are. Listen to your contract here: 'I agree to prepare all necessary plans and specifications for all remodeling and reconstruction of present buildings, and the new buildings, also act as supervising architect for all construction work to be done upon your lot bounded by Central, San Carlos, and Sunshine Avenues, Sausalito, Marin County.' Now, you stated in there that it is his lot, and that is agreed to. Now, you want to show that it was not his lot; you want to vary it by showing that it was not his lot. Mr. Walsh: We are not trying to vary the terms of this instrument. We are trying to show that there was no contract at all. The Court: I think that there 'is a contract." In the argument, participated in by the court and both counsel, it was made clear that the defendant offered to prove his affirmative defense and that he was stopped by reason of the recital "on your lot", which was contained in the written instrument. The defendant cites and relies on *P. A. Smith Co.* v. *Muller*, 201 Cal. 219 [256 Pac. 411]. In that case, at page 222, appear the following passages: "It is well settled by the decisions in many jurisdictions that evidence that parties never intended a writing to constitute a contract, but that in lieu thereof another contract was entered into between them, is not objectionable under the parol evidence rule. Such evidence does not change a written contract by parol, but serves to establish

that such contract had no force, efficacy, or effect. (Citing cases.) . . . 'The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract. The authorities supporting these views are numerous.' '' *Reiner* v. *Crawford,* 23 Wash. 669 [83 Am. St. Rep. 848, 63 Pac. 516], is very closely in point. Crawford owned certain mining stock which was in the hands of his agent at Spokane for the purposes of selling it. At Davenport he signed an agreement selling the stock to Reiner. At the same time Crawford and Reiner entered into an oral agreement that the sale to Reiner was of no effect if the stock had been sold by Crawford's agent before the agent's hand could be stopped. The oral contract was held to be admissible under the authorities we have cited and many others. In the case at bar the question, ''Was there any conversation at that time leading up to this contract?'' ordinarily would have been improper. However, as stated in the authorities just cited, an exception exists as to a collateral agreement and which necessarily must have been made, if made at all, at a prior date or contemporaneous with the purported contract which is under attack. Although the question was objectionable for certain purposes it was unobjectionable for the purpose as stated by Mr. Walsh in addressing the court. (*P. A. Smith Co.* v. *Muller, supra.*) The fact that the contract sued upon recited that the lot described in the written instrument belonged to the defendant is not determinative. The determinative fact is, did or did not the parties enter into the collateral conditional contract? (*Burke* v. *Dulaney,* 153 U. S. 228 [38 L. Ed. 698, 14 Sup. Ct. Rep. 816].) In that case the plaintiff sued on a promissory note. The defendant offered evidence that the parties entered into a conditional contract that the note might or might not become obligatory. Clearly, such conditional contract would conflict with the covenant of the note to pay at such a time and place. However, it was held that the evidence should have been admitted. On page 238 the court quoted with approval '' 'The error was in applying to the case the familiar and well-established rule that parol evidence is inadmissible to con-

tradict or vary a written contract. A written contract must be in force as a binding obligation to make it subject to this rule. *Such a contract cannot become a binding obligation until it has been delivered. Its delivery may be absolute or conditional. If the latter, then it does not become a binding obligation until the condition upon which its delivery depends has been fulfilled.* If the payee of a note has it in his. possession, that fact would be *prima facie* evidence that it had been delivered; but it would be only *prima facie* evidence. The fact could be shown to be otherwise and by parol evidence. *Such parol evidence does not contradict the note or seek to vary its terms. It merely goes to the point of its nondelivery. The note in its terms is precisely what both the maker and the payee intended it to be. No one desires to vary its terms or to contradict them.'* '' (Italics ours.) It is clear, therefore, that the defendant should have been permitted to introduce evidence that the contract sued upon was delivered conditionally. ■ More-over, there is evidence in the record going to show that the ruling was prejudicially erroneous and that on a new trial the judgment will probably be for the defendant. The evidence just mentioned, among other things, included the following: There is contained in the transcript a set of formal specifications. The defendant claims that he was never given a copy by the plaintiff. There is also in the transcript a document marked ''outline of specifications''. An examination shows it is what it purports to be, merely an ''outline''. The latter document the defendant admits he did receive. The plans were before the trial court, but were not certified to this court. The reporter's transcript contains references to a set of pencil plans and to a set of blue-prints not completed as to foundations. The defendant admitted having received the former, but claimed he bought the latter from the printer thereof. There was evidence to the effect that about the time of the date of the contract sued upon the plaintiff and defendant both undertook to locate some person who would finance the building project. There is evidence that for the purpose of obtaining finances the above-mentioned blue-prints and the ''outline of specifications'' were drawn up and used. There was evidence to the effect that formal plans and formal

specifications were never called forth by reason of the fact that the parties were unable to finance the enterprise.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 9, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 8, 1931.