[Civ. No. 12455. Second Dist., Div. One. July 10, 1941.]

FREDRICA E. BERTRAND, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

Mayock & Lester for Appellant.

Frank Karr, C. W. Cornell, E. E. Morris and O. O. Collins for Respondents.

DESMOND, J., *pro tem.*—Plaintiff appeals from a judgment awarding her the sum of $963.05 and asks that the cause be remanded for a new trial upon the sole question of damages, claiming that "the court erred in finding that the sum of $963.05 was a reasonable sum to be allowed plaintiff for general and special damages, in that there is insufficient evidence to support said finding," also that error arose when the court found an aggregate sum for damages and refused "to make separate findings on the various items of special damage which were specially pleaded and denied by the defendants and which were in part stipulated to at the trial and in part proved by uncontradicted evidence."

The action was one for injuries received by appellant as she was alighting from a street car operated by respondent, and the finding which gives rise to this appeal reads as follows: "That by reason of the negligence and injuries received as aforesaid, plaintiff has expended certain funds for hospitalization, doctors, medical and nurse service, and that by reason thereof, and loss of time, and pain suffered by plaintiff, the plaintiff has been damaged in the aggregate sum of $963.05, which the court finds to be a reasonable sum."

At the trial the following items of special damage were stipulated to be correct: Hospital bill, $125.95; ambulance, $2.50; nursing, $164.60. Dr. Macklin testified that his bill amounted to $78. The total of these items is $371.05. Just how much of the balance, $592, the trial court estimated was due "for loss of time" mentioned in the finding, or for "pain suffered by the plaintiff," is a matter of speculation; although there is a statement in appellant's opening brief undenied by respondent that the trial judge indicated before the judgment was prepared that the items making up the total included those stipulated to as correct, aggregating $293.05, Dr. Macklin's bill $70, loss of earnings $100, and general damage $500, making the total $963.05; that later, when presented with findings showing plaintiff's inability would extend to a date two years after the accident, and that her earning capacity was $20 per week, the judge refused to adopt them but made the finding to which exception is taken and which lumps the general and special damage.

Because the trial court failed to segregate financially the items "loss of time" and "pain" in its estimate of damage and to make a separate finding as to how much time was lost

by appellant from her regular employment, she claims a proper cause for reversal, relying upon several cases including *James v. Haley*, 212 Cal. 142 [297 Pac. 920] (1931), where the court said (at page 147): "Ever since the adoption of the codes, it has been the rule that findings are required on all material issues raised by the pleadings and evidence, unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed. (24 Cal. Jur., p. 935, Sec. 183, and p. 940, Sec. 186.)"

The accident in which plaintiff was injured occurred April 6, 1938. In her complaint filed in the following month she alleged, paragraph VII thereof: "That by reason of the negligence and injuries as aforesaid, this plaintiff has not been able to work; that for some time prior to said accident this plaintiff was working and earning twenty dollars ($20.00) per week; that since said accident she has been completely unable to work and will be unable to do any work whatever for the next four (4) months, to her damage in the sum of four hundred eighty dollars ($480.00)." The action was tried on April 10th and April 14th, 1939, approximately one year after the accident, and at the session of April 10th paragraph VII of the complaint was amended so that the closing portion reads "that since said accident she has been completely unable to work and will be unable to do any work whatever to her damage in the sum of $5,000.00." This change in the complaint was made immediately after Dr. Schultz, who had examined the plaintiff in February, 1939, testified as to her physical condition at that time. He stated that in his opinion "her heart condition resulted from the accident because at the present time she has a chronic myocarditis," which we understand to be an inflammation of the muscular portion of the wall of the heart. He also found that plaintiff had secondary anemia and "a definite nephritis," which is a kidney involvement. There was no evidence of any history of it prior thereto. Dr. Schultz observed that the plaintiff flinched at the time pressure was applied to the back and on the hip and stated: "This is largely objective when they flinch." In his judgment "her injuries are permanent in character. I doubt very much if she will ever be able to work again. I do not think she will."

Defendant produced as a witness Dr. Arnold M. Scholz, a physician and surgeon employed in the medical department of defendant. He stated that he examined the plaintiff on July 22, 1938, about 3 months after the accident and that he then found no evidence of external injuries; that plaintiff, an elderly woman, was in fair general health, whose motions were within normal limits for her age. Dr. Scholz found evidence of heart trouble. "Both the increase of the blood pressure and the intermittent pulse with skipped beats was indicative of some degeneration of her heart muscle. That can be called myocarditis. I do not see how she could have received any injury to her heart in the accident which she described to me. In my opinion her heart trouble existed for some time before my examination, and in my opinion prior to her accident in April. In my opinion it was something that had been coming on for years. . . . In my opinion the accident did not have any effect upon the white blood cells. The anemia was absolutely not caused by the accident." Later defendant asked the trial judge to appoint an impartial doctor to examine the plaintiff. He named Dr. John B. Doyle for the purpose and on April 13th, the day before trial was resumed, this third examination was made. Dr. Doyle reported in some detail the "history" of plaintiff's accident and her physical condition as she gave it to him and as a result of his examination determined that "the patient suffers from myocardial degeneration," observing, in the examination, evidence of arteriosclerosis and hypertension. *"The emotional stresses associated with and following the accident have unquestionably led to wide fluctuations in pulse rate and blood pressure.* I do not believe that the accident has caused the patient any appreciable permanent damage. *Her present symptoms* are due to vascular disease and *are aggravated by her emotional state."* In answer to the question "In other words, she is about as good now as she was before the accident?" Dr. Doyle replied: "I think she is, aside from the fact that an elderly person does not stand a jolt like that as well as a thirty year old, and also *the accident unquestionably has precipitated emotional situations which have. caused her blood pressure to fluctuate as I have indicated, widely from time to time."* He further stated: *"I think that the fluctuations in her blood pressure, of course, are probably due to a variety of emotional stresses associated*

*with and subsequent to the accident,* but I do not think that they are likely to cause any appreciable change as far as duration of life or damage to organs is concerned." (Emphasis supplied.) And in answer to the question "Does she suffer any pain or distress now over or near the regions where your history showed she had been injured?" the physician said, "Yes"; and the colloquy then continues: "Q. Well, in your opinion, will that pass away? A. Yes, sir. Q. It will? A. Yes. Q. Realizing the fact that the accident occurred over a year ago, what would be your judgment as to how long it would be before she was able to carry on what was her pre-accidental normal activity? A. Well, I would assume that she would continue to improve for an interval of eighteen to twenty-four months from the time of the accident. Q. That would be another year from now? A. That is right. Q. And after that you feel that she would be free from all the effects of this particular accident? A. I think so. Q. Outside of the mental effects, if any, that may result from fear or shock resulting from trauma? A. Well, as a rule they wear off. Q. At the present time she is not in condition to carry on her work as a seamstress, is she? A. No, I think she is too much emotionally upset now to carry on. Q. And you noticed, too, when she tried to put her hand some definite place, there was an indefinite wavering prior to touching the place indicated? A. Well, that is an emotional thing, what she did was something like this (indicating) and then hit the target. Often where there is an organic ataxia that incoordination reveals it. This represents indecision, and that sort of thing, rather than organic change or cerebellar incoordination. Q. You feel, then, within another twelve months she will be able to carry on her normal functions? A. Assuming her hypertension and arteriosclerotic condition do not interfere with it. Q. And do not increase? A. That is right. . . . Q. Doctor, some of this emotional trouble that you talk about, don't you think her lawsuit has something to do with that? A. I think it is unquestionably one factor. Q. And as soon as this is decided one way or the other, that will go away? A. That part of it will go away. Q. That is what brings on some of this hypertension? A. I think it is unquestionably one of the factors."

It may be noted here that Dr. Macklin who attended the plaintiff immediately after the accident found a contusion

with swelling over the right side of the head and a swollen ankle and discoloration two days later in those areas, as well as in the back and thighs. He testified that within the next two days he placed the plaintiff in the hospital where she remained for about three weeks and that X-ray pictures showed that she had no broken bones; that he found something more than bruises and contusions; that he was compelled to make a diagnosis of concussion of the brain.

From this review it appears that of the four physicians who attended or examined appellant only two expressed an opinion as to whether her working ability was impaired by the accident. Neither Dr. Macklin nor Dr. Scholz testified on this subject, presumably because they were not questioned about it.

In view of the medical testimony which was presented bearing on the question of appellant's ability to return to work we feel that a specific finding should have been made on the issue of how much time, if any, was lost by appellant from her regular employment, as a result of the accident. The general finding which was made as to appellant's physical condition does not go to that point. It is as follows: "That the plaintiff has recovered from the injuries received in said accident, but is now suffering, and had been for some time prior to said accident, from senility, myocardial degeneration, hypertensive reaction and arteriosclerosis, and that none of said ailments were caused or aggravated by any injuries received in said accident." We have examined the various cases cited by counsel affirming judgments in which certain items of damage were included in a lump sum, but are not persuaded that in this case the appellant, the prevailing party, was not entitled to have her damages separately fixed.

Respondent calls our attention to the adoption in 1926 of section 4¾ of art. VI of the Constitution and to the enactment in 1927 of section 956a of the Code of Civil Procedure, and takes the position "that under the law as it stands today it is not necessary for an appellate court to reverse a judgment because of the mere failure of the trial court to find on an issue," citing *Sessions* v. *Trott*, 220 Cal. 714 [32 Pac. (2d) 374] (1934) and *Gustafson* v. *Blunk*, 4 Cal. App. (2d) 630 [41 Pac. (2d) 953] (1935). These cases approve and adopt the measures which now enable an appellate court,

surveying the evidence in an appealed case, "to make findings of fact contrary to, or in addition to those made by the trial court."

Another case where the same course was followed is *Sturdevant* v. *Sturdevant*, 3 Cal. App. (2d) 443 [39 Pac. (2d) 433] (1934). There the appellate court made new findings, on the evidence brought before it, upon issues specially pleaded but upon which the trial court had failed to make specific findings. Holding this failure to be prejudicial error, the appellate court reversed the decision and remanded the cause to the trial court with instructions to enter a contrary judgment in accordance with the amended findings and the opinion on appeal. In its consideration of the case the court uses the following language (p. 446) : "Under the system of express findings provided for by the Code of Civil Procedure (Secs. 632, 633) full findings, unless waived, are required on all material issues raised by the pleadings and evidence. . . . A failure to make a finding on a material issue results in prejudicial error entitling the complaining party to a reversal, provided it appears from the record that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of such party."

There can be no question that, when conditions warrant such action, appellate courts are vested with authority to determine without additional expense and loss of time whatever justice may require in any case submitted to them but clearly this does not mean that the old rule requiring findings on material issues has been abrogated. Whether it is feasible for the appellate court to exercise the powers granted by the cited additions to the Constitution and the Code of Civil Procedure must always depend upon the situation presented by each appeal.

In the instant case we feel that the better course is to remand the cause to the superior court for a new trial on the sole question of the amount of damages sustained by the appellant, separate findings to be made on the items of special damage. It is so ordered, the judgment being hereby reversed.

White, J., concurred.

DORAN, Acting P. J., Dissenting.—I dissent. In my opinion the judgment should be affirmed.

A petition for a rehearing was denied August 1, 1941. Doran, Acting P. J., voted for a rehearing.

Respondents' petition for a hearing by the Supreme Court was denied August 28, 1941.