[S. F. No. 17299.   In Bank.   Jan. 28, 1947.]

ALFRED D. SEVERANCE, Appellant, v. KNIGHT-COUNIHAN COMPANY (a Corporation), Respondent.

562

J. W. Jackson for Appellant.

Jackson Maddux and Charles F. Jonas for Respondent.

TRAYNOR, J.—Defendant operates a printing plant in San Francisco. Plaintiff was employed by defendant as a salesman of its tariff business from May 1936 to January 1943. For over twenty years before his employment with defendant he conducted a printing business of his own. Defendant had no tariff business when plaintiff entered its employ, and plaintiff built up defendant's tariff business during the period of his employment to a volume of approximately $50,000 a year. When plaintiff resigned his position with defendant, he notified

defendant of his decision to exercise an option to purchase at their metal value all tariff plates used in defendant's business. The parties agree that at this time the metal value of the plates was $8,000 and their value as tariff plates $31,450. Defendant refused to sell the plates, and plaintiff brought this action to recover them or $31,450, their value as tariff plates, and damages. The trial court entered judgment for defendant. It found that the option agreement ''was collusive and was drawn and signed by plaintiff and defendant for the purpose and with the intent to defraud creditors of defendant; that said agreement provides for a wholly inadequate and unfair consideration to be paid by plaintiff for said property; that said agreement was and is contrary to good morals and public policy, illegal, void and unenforceable.'' Plaintiff appeals.

Plaintiff contends that the judgment of the trial court is not supported by the evidence. Defendant contends that there was no contract, since the written agreement on which plaintiff relies was never delivered to him. Defendant also contends that even if there was a contract, it was unenforceable on the grounds that it was to become operative only upon the condition that defendant's creditors took action to take over defendant's business or to force defendant into liquidation; that even if that condition materialized, plaintiff was to acquire the plates only as a trustee; and that the sole purpose of the agreement was to withhold a valuable asset of defendant's from the creditors and to place in its stead a claim against plaintiff who had no funds to pay it. The trial court made no finding as to whether a signed copy of the agreement was delivered to plaintiff within the meaning of section 1626 of the Civil Code. It is immaterial, however, whether the written agreement was delivered. If it was not, there was no contract. If it was, the evidence supports the judgment of the trial court that the contract was unenforceable. ■ The fact that the contract depended upon a condition precedent could be shown by parol evidence, since the contract did not include express provisions inconsistent with the condition. (*P. A. Smith Co.* v. *Muller,* 201 Cal. 219, 222 [256 P. 411]; *Verzan* v. *McGregor,* 23 Cal. 339, 343; *Gleeson* v. *Dunn,* 113 Cal.App. 347, 350 [298 P. 119]; *Cooper* v. *Cooper,* 3 Cal.App.2d 154, 158 [39 P.2d 820]; see Restatement, Contracts, § 241; 3 Williston, Contracts, rev. ed., § 634 and cases there cited; 9 Wigmore, Evidence, 3d ed., § 2410; Corbin, *Conditional Delivery of Written Contracts,* 36 Yale L.J. 443.)

The agreement on which the action is based reads as follows:

"Agreement. Now this agreement made and entered into this 16th day of February, 1938 by and between ALFRED D. SEVERANCE, hereinafter called first party, and KNIGHT-COUNIHAN COMPANY, a corporation, hereinafter called second party.

"WHEREAS, first party is now employed by second party, and desires to continue in the employ of second party.

"WHEREAS, second party is engaged in a general printing business and desires the services of first party.

"NOW, THEREFORE, in consideration of the aforesaid, and the mutual covenants and conditions to be performed by the parties hereto, they agree as follows:

"That as part of the consideration for the services rendered and to be rendered by first party to second party, and in addition to the salary received, and to be paid first party by second party, it is hereby understood and agreed that first party shall have the option and right to purchase, as hereinafter provided, all of the tariff pages set up and/or standing, whether completed or not, and used, or had been used, or to be used in connection with the business of the second party.

"That said option and right to purchase shall, and may be exercised within thirty days after the termination of first party's employment with second party for any reason whatever, or said option and right to purchase shall, or may be exercised within thirty days after written notice by second party to first party that there has been a substantial change in the management of second party, or that the business of second party has been consolidated with, or sold, or assigned to another person, firm, copartnership, or corporation, or second party has, or is about to liquidate its business, and first party's option and right to purchase may be exercised by him upon the happening of any of the events mentioned aforesaid, even though second party fails to give such written notice.

"First party shall at the time of the exercise of said option and right to purchase, give second party written notice thereof and shall have sixty days thereafter within which to pay second party as and for the full purchase price of said tariff pages, which shall be the then prevailing market price of all the metal contained in said tariff pages.

"That second party shall not have the right, and hereby agrees not to sell or assign in any manner whatever said tariff pages, or the use thereof to any person, firm, copartnership,

or corporation without the written consent of first party during the term hereof.

"This agreement shall be binding upon the successors and assigns of second party and terminate at the death of the first party."

The evidence showed without conflict that when the agreement was signed, defendant was in an unsound financial condition and that the parties feared that defendant's creditors would either take over the business or force defendant into liquidation. The tariff business was a valuable part of defendant's printing enterprise and could be "saved" from the creditors if a way were found to withhold the tariff plates. According to plaintiff's testimony, defendant agreed to give him an opportunity to obtain its whole tariff business by paying the metal value of the plates at any time he left defendant's employ, defendant's management changed, or defendant "went into insolvency." Plaintiff had not bound himself to stay in defendant's employ for a certain term and could thus acquire defendant's tariff business at any time for a price far below its true value. Even without leaving defendant's employ he could acquire defendant's tariff business if there was any substantial change in defendant's management. According to the testimony of defendant's president, Mr. Counihan, there was no intention to enable plaintiff to obtain for himself the whole of defendant's tariff business by paying the metal value of the plates. The agreement with plaintiff was made merely to enable defendant or its directors in cooperation with plaintiff to continue the tariff business, if defendant's creditors took action against it that prevented it from continuing its business. In that event the plates were to be vested in plaintiff as trustee for defendant or for a group of individuals consisting of defendant's directors and plaintiff; the purchase price for the plates was to be paid, not by plaintiff, who did not have sufficient funds, but by Counihan. Counihan testified: "I told Mr. Severance that the creditors were hounding us, and I felt possibly that the creditors might take over the company, and figured that if they did, I would like to keep the company continuing, and possibly that we could save the tariff business by some method whereby I could let him have the tariff pages for the price of the metal, and continue the company in existence after the creditors foreclosed on us. . . . The story is that we were attempting to save

the tariff plates to continue the business; so the contract was for the price of the metal, rather than let the junk man have it; and continue the business and pay off the creditors with the same value in the metal as the junk man would have paid. The metal was not for him at all, it was for the little company to continue. . . . Q. Mr. Severance was to get the metal? A. No. Mr. Severance was to get the metal for us at the price—the tariff pages at the price of the metal, so we could start in business again, if we were liquidated. Q. Was there anything in writing that you obtained from Mr. Severance to protect yourself in that respect? A. No. Q. Was there any understanding as to when you were to deliver the agreements and to whom? A. I trusted Mr. Severance like my brother. I didn't need any particular agreement outside of that. That was all. We were in unison. We were going to be closed up, and this would let us get the tariff pages and start over again. . . . I was the one that was going to put up the money. Mr. Severance didn't have any money to buy it. I was the one that proposed to raise the money. . . . Q. And if you wanted someone else to buy it they could buy it? A. I didn't want that, I wanted Mr. Severance to remain in the company with the other boys and continue on.'' There was a conflict in the evidence, which remained unresolved by the trial court, as to whether after the agreement had been signed all executed copies were given to an officer of defendant for safe-keeping or whether one of them was given to plaintiff and later returned by him upon Counihan's request because of the latter's fear that defendant's principal creditor might obtain knowledge of the agreement.

Even if it be assumed that a signed copy was delivered to plaintiff, the evidence showed that the contract remained inoperative for failure of the condition precedent on which its effectiveness depended, namely, defendant's creditors taking over defendant's business or forcing defendant into liquidation. The evidence shows without conflict that defendant's creditors did not take such action and that some months after the agreement was signed, defendant made an arrangement with its creditors involving personal funds of defendant's president and thus removed the danger that the creditors would take over defendant's business or force it into liquidation. It is contended that this court cannot affirm the judgment of the trial court on this ground, since the trial court made no express finding thereon, and since there was evidence, namely,

plaintiff's testimony, that he could have exercised the rights under the contract immediately after it was executed. This evidence was inseparably connected, however, with plaintiff's testimony that the contract was not made for the purpose of defrauding defendant's creditors but constituted an adequate remuneration for plaintiff's services. Since the trial court found that the contract was collusive and was drawn and signed by both parties for the purpose of defrauding the creditors of defendant and that it provided for an inadequate and unfair consideration, it clearly disbelieved plaintiff's testimony that the contract was an award for his services and that he could have enforced the contract immediately after it was signed. The findings of the trial court include therefore the implied finding that the taking of action by defendant's creditors was a condition precedent to the exercise of plaintiff's rights under the contract. Even if the condition precedent on which the effectiveness of the contract depended had occurred, plaintiff would not have been entitled to exercise the option for his own benefit without breach of the trust on which the agreement was based.

Furthermore, the agreement is void because it was made to defraud creditors. It is contended that the agreement would not serve that purpose, since according to Counihan's testimony the payment of the metal value of the tariff plates would have been enough to satisfy defendant's creditors. He testified: ". . . the company was solvent enough to pay the creditors with the metal as metal, and we were to get the pages of tariff and start up again. . . ." The unconflicting evidence shows that the agreement was made when defendant's financial condition was unsound, its sales volume "very badly down," and it was "hounded" by its creditors. It is clear that under these circumstances, defendant and plaintiff were concerned with the possibility that the sales volume would undergo a further decrease and that additional indebtedness would accumulate so that defendant would be unable to pay the full amount of its indebtedness, which would include the claims of both present and future creditors. Hence, even if it be assumed that the creditors at the time of the agreement could have been satisfied, the agreement would still have been fraudulent as impairing the rights of future creditors. Future creditors as well as present creditors are protected by the legislation relating to fraudulent conveyances. Such protec-

tion is extended not only under the Uniform Fraudulent Conveyance Act, which was adopted in this state in 1939 (Civ. Code, § 3439.7), but under the law as it stood in 1938 when the agreement was made. (Former Civ. Code, § 3439; *Sasaki* v. *Kai*, 56 Cal.App.2d 406, 410 [133 P.2d 18]. ▮ Although it is recognized that a transferor of property *conveyed* to defraud creditors cannot revoke the conveyance (*First Nat. Bank.* v. *Eastman*, 144 Cal.487, 489 [77 P. 1043, 103 Am.St. Rep. 95, 1 Ann.Cas. 626]; *Moore* v. *Schneider*, 196 Cal. 380, 385 [238 P. 81]; *Liuzza* v. *Bell*, 40 Cal.App.2d 417, 424 [104 P.2d 1095]; See Glenn, Fraudulent Conveyances, rev. ed. § 114; 24 Am.Jur. 265), it is also recognized in this state that an *executory contract* is void, if the parties have entered into the contract for the purpose of defrauding creditors of one of the parties. (*Hays* v. *Windsor*, 130 Cal. 230, 234 [62 P. 395]; *Ager* v. *Duncan*, 50 Cal. 325; Glenn, ibid., §§ 116-118; 24 Am.Jur. 266; see 6 Williston, Contracts, rev. ed. §§ 1739, 1754.) Both parties to such a contract are punishable under section 531 of the Penal Code. (See, also, Pen. Code §§ 154, 155, 31.) ▮ It is settled that a contract must have a lawful object (Civ. Code, §§ 1596, 1598, 1599) and that a contract for an object prohibited by a penal law is void. ''The general rule controlling in cases of this character is that where a statute prohibits or attaches a penalty to the doing of an act, the act is void, and this, notwithstanding that the statute does not expressly pronounce it so, and it is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum*. . . . The imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and a contract founded upon such act is void.'' (*Smith* v. *Bach*, 183 Cal. 259, 262 [191 P. 14]; *City of Oakland* v. *California Const. Co.*, 15 Cal.2d 573, 577 [104 P.2d 30]; *Duntley* v. *Kagarise*, 10 Cal.App.2d 394, 397 [52 P.2d 560]; see *Kyne* v. *Kyne*, 16 Cal.2d 436, 438 [106 P.2d 620]; Restatement, Contracts, § 598; 4 Cal.Jur. 10-Yr.Supp. 79, 80.)

It is contended that despite its illegal purpose this contract is enforceable on the ground that the parties were not *in pari delicto* since plaintiff as an employee of defendant was conducting the negotiations concerning the contract with defendant's president upon the initiative of the latter who was his superior. Even if it be assumed that plaintiff was less at fault

than defendant it would not follow that this contract is valid and enforceable in a court of equity. ■ The fact that the parties to an executed illegal contract are not equally at fault may justify recovery by the party whose fault is slight of what he has rendered as performance of the contract. Thus "one cannot lay a trap for another, secure his confidence, induce him to make a conveyance of his property in expectation that it will be returned, and thereafter retain the fruits of his perfidy on the ground that the donor too readily yielded to temptation to save himself at the possible expense of his creditors." (*Watson* v. *Poore,* 18 Cal.2d 302, 312 [115 P.2d 478].; *Birney* v. *Birney,* 217 Cal. 353, 359 [18 P.2d 672] ; *Chamberlain* v. *Chamberlain,* 7 Cal.App. 634, 639 [95 P. 659] ; *Woodham* v. *Allen,* 130 Cal. 194, 199 [62 P. 398] ; see Restatement, Contracts, § 604.) ■ If the parties are not *in pari delicto* the party who is only slightly at fault can also recover money paid under an executory contract. (*McAllister* v. *Drapeau,* 14 Cal.2d 102, 112 [92 P.2d 911, 125 A.L.R. 800].)

■ Such relief is even granted to a party equally at fault, if he repudiates the contract before the illegal part of the bargain is executed. (*Wassermann* v. *Sloss,* 117 Cal. 425, 431 [49 P. 566, 59 Am.St.Rep. 209, 38 L.R.A. 176] ; see Restatement, Contracts, § 605.) The granting of relief, however, to one who repudiates an illegal contract is entirely different from granting relief to one who seeks to enforce it. ■ A court will not enforce an illegal contract merely because one party's fault was less than the other's. (*Smith* v. *Bach,* 183 Cal. 259, 263 [191 P. 14] ; *Butler* v. *Agnew,* 9 Cal.App. 327, 331 [99 P. 395].) Moreover, plaintiff did not plead that he acted under the influence of defendant's president. The evidence shows without conflict that the contract was drafted by plaintiff's attorney, and, according to plaintiff's allegations and testimony, he took the initiative in obtaining the contract to enable him to obtain the tariff plates if he chose to leave defendant's employ, if he were dismissed, or if defendant was forced into bankruptcy.

■ It is contended that in two early cases this court repudiated the doctrine that an executory contract made for the purpose of defrauding creditors cannot be enforced. These cases must be read in the light of the circumstances there involved. In *Smith* v. *49 & 56 Quartz Mining Co.,* 14 Cal. 242, it was held that there was no intention to defraud

the transferor's creditors. It was said hypothetically that if there were such an intent of the transferor, it would not prevent him from recovering property that he had hypothecated, which, by the fact of such recovery, would become available to his creditors. In *Davis* v. *Mitchell,* 34 Cal. 81, the fraudulent conveyance was executed and a note was received in exchange for the property. It was held that the holder of the note could sue thereon, since he had parted with the property and could not recover it. Anything in these cases inconsistent with *Hays* v. *Windsor, supra,* and *Ager* v. *Duncan, supra,* must be considered disapproved by those cases.

Moreover, defendant's creditors would be delayed by the agreement (former Civ. Code § 3439; Civ. Code § 3439.7), since plaintiff was given the right thereunder to acquire the plates on sixty-days credit. There was evidence that plaintiff had no funds to pay the purchase price. Hence, the sixty-days' credit meant that he had either to secure the money within the sixty-days from some one else or to obtain it from the future earnings of the tariff business itself. Thus, the creditors would receive, instead of valuable property, merely a claim against plaintiff, the recovery of which was doubtful.

Apart from the foregoing considerations, the trial court might well have disbelieved Counihan's testimony that defendant would have been solvent enough to pay its creditors had it received the metal value of the plates. Counihan also testified that the claim of the principal creditor was about $50,000. It is clear that defendant, a printing corporation "hounded" by its creditors, had little liquid assets and that its assets available to meet its liabilities consisted mostly of machinery and other assets of similar nature of uncertain value to the creditors. Counihan's testimony that defendant could have paid its creditors had it received the metal value of the plates was therefore a conclusion rather than a statement of fact. The trial court had reason to question the soundness of that conclusion, since Counihan testified that defendant owed its principal creditor $50,000, whereas plaintiff testified that this claim alone exceeded $100,000. If plaintiff was correct, defendant owed $50,000 more than Counihan supposed when he testified that the proceeds from the sale of the plates as metal would have enabled the company to pay its creditors.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Spence, J., concurred.

EDMONDS, J.—I do not agree with the statement that "an *executory contract* is void [as between the parties], if the parties have entered into the contract for the purpose of defrauding the creditors of one of the parties." In early cases this court has held that such a contract may be enforced by a third person against the dishonest debtor even if the plaintiff participated in the fraud. Later decisions are to the contrary. Courts have also allowed a recovery if the parties are not *in pari delicto*. Furthermore, in my opinion, the judgment adverse to Severance should be reversed because of the trial court's failure to make findings upon material issues.

Contrary to the rule now promulgated in the majority opinion, it has been held in this state, and in a number of other jurisdictions, that an executory contract in fraud of creditors is enforceable by a third person against the debtor although both of them participated in the fraud. (*Davis* v. *Mitchell*, 34 Cal. 81 (overruled on other grounds, *McBride* v. *Fallon*, 65 Cal. 301 [4 P. 17]); *Smith* v. *49 & 56 Quartz Mining Co.*, 14 Cal. 242; *Hazleton* v. *Lewis*, 267 Mass. 533 [166 N.E. 876]; *Stillings* v. *Turner*, 153 Mass. 534 [27 N.E. 671]; *Harvey* v. *Varney*, 98 Mass. 118; *Winton* v. *Freeman*, 102 Pa. 366; *Clemens* v. *Clemens*, 28 Wis. 637 [9 Am.Rep. 520]; *Carpenter* v. *McClure*, 39 Vt. 9 [91 Am.Dec. 370]; *Bradtfeldt* v. *Cooke*, 27 Ore. 194 [40 P. 1, 50 Am.St.Rep. 701]; *Butler* v. *Moore*, 73 Me. 151 [40 Am.Rep. 348]; *Nichols* v. *Patten*, 18 Me. 231 [36 Am.Dec. 713]; *Mayberry* v. *Clark*, 317 Mo. 442 [297 S.W. 39]; *Gary, Hudson & Co.* v. *Jacobson*, 55 Miss. 204 [30 Am.Rep. 514]; *Giddens* v. *Bolling*, 93 Ala. 92 [9 So. 427]; for cases *contra* see 37 C.J.S. 1103; 27 C.J. 660.) Concededly, there is a conflict of authority upon this question, and the California cases add to the confusion. Two of the four decisions of this court support the non-enforceability rule (*Hays* v. *Windsor*, 130 Cal. 230 [62 P. 395]; *Ager* v. *Duncan*, 50 Cal. 325); the other two hold to the contrary (*Davis* v. *Mitchell*, *supra*; *Smith* v. *49 & 56 Quartz Mining Co.*, *supra*). But in none of these cases is there an adequate discussion of the reasons for the rule adopted, and the later two do not mention the earlier ones. Under these circumstances, "Amid such a conflict of authority it should be the duty of a court . . . to adopt that line of decisions which, in its judgment, presents the better reason. . . ." (*Bradtfeldt* v. *Cooke*, *supra*.)

Generally "where a statute prohibits or attaches a penalty to the doing of an act, the act is void" (*Smith* v. *Bach,* 183 Cal. 259, 262 [191 P. 14] ; see *City of Oakland* v. *California Const. Co.,* 15 Cal.2d 573, 578 [104 P.2d 30]), and this court has held that, as to creditors themselves, transfers in fraud of their rights are void, being in contravention of statute and public policy. (*Everts* v. *Sunset Farms, Inc.,* 9 Cal.2d 691, 698 [72 P.2d 543] ; see *Sasaki* v. *Kai,* 56 Cal.App.2d 406, 408 [133 P.2d 18].) But whether a contract is void for all purposes is a question of legislative intent and only when the language of a statute makes no other conclusion reasonably possible should an agreement contrary to its provisions be held totally void for all purposes. (See, *Smith* v. *Bach, supra,* p. 262; 5 Willison, Contracts, rev. ed., pp. 4564, 4575.) In other words, "If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of the relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied. (See, Williston on The Law of Contracts, vol. 3, sec. 1789; vol. 5 [2d ed.], sec. 1630. Cf. American Law Institute, Restatement of the Law of Contracts, secs. 548, 600." (*Rosasco Creameries, Inc.* v. *Cohen,* 276 N.Y. 274, 278 [11 .N.E.2d 908, 118 A.L.R. 641].)

The general rule that an agreement in violation of a criminal or penal statute is void is subject to the qualification that the contract will not be declared void for certain purposes, or as to certain persons, where the purposes or objects of the legislation would be defeated by such a determination. (*Rosasco Creameries, Inc.* v. *Cohen, supra,* p. 280; *Reconstruction Finance Corp.* v. *Central Republic T. Co.,* 17 F.Supp. 263, 298; *Lamb* v. *Condon,* 276 Pa. 544 [120 A. 546, 548] ; *Furlong* v. *Johnston,* 209 App.Div. 198 [204 N.Y.S. 710, 712] ; *State* v. *Haid,* 325 Mo. 949 [30 S.W.2d 100, 103] ; 3 Horack's Sutherland Statutory Construction, 3d ed., § 5405.) "In passing upon contracts made in contravention of the statute, the court should carefully consider in each case the object of the statute, the evil it was enacted to remedy, and the effect of holding contracts in violation of it void, for the purpose of ascertaining whether or not the lawmaking power intended to make such contracts void; and, if, from all these considerations, it is manifest that the Legislature had no such intention, the contracts should be sustained and enforced; other-

wise they should be held void." (*Reconstruction Finance Corp.* v. *Central Republic T. Co., supra,* p. 298.) For example, where a negotiable instrument is made in violation of the provisions of a penal statute its validity in the hands of a holder in due course has been sustained. (*Union Trust Co.* v. *Preston Nat. Bank,* 136 Mich. 460 [99 N.W. 399, 112 Am.St. Rep. 370, 4 Ann.Cas. 347].)

Applying these principles, persuasive reasons support the rule allowing limited enforceability. Concededly, where a creditor's rights are involved a contract which limits or obstructs his recovery is void. But neither the civil nor the criminal provisions dealing with contracts in fraud of creditors expressly declare that such an agreement may not be enforced by a third party against a debtor where a creditor's rights will not be prejudiced. Moreover, at the time the agreement in controversy was executed, the Civil Code made such a transfer void only as "against all creditors" (Former Civ. Code § 3439), and unless the person seeking to avoid the contract falls within one of the classes sought to be protected by the statute, he has no standing in court and cannot complain of the transaction however fraudulent. (*Ackerman* v. *Schultz,* 178 Cal. 190 [172 P. 609]; *Frink* v. *Roe,* 70 Cal. 296 [11 P. 820]; *H. D. Roosen Co.* v. *Pacific Radio Pub. Co.,* 123 Cal.App. 525 [11 P.2d 873]; see 12 Cal.Jur. 975.)

But the most persuasive reason for allowing such contracts to be enforced by a third party against the debtor where creditors' rights will not be prejudiced is that the rule implements public policy. The purpose of both the civil and the criminal statutes which concern contracts in fraud of creditors is to discourage persons from making them. Yet the rule now adopted by this court does nothing to hinder such agreements and therefore, to some extent, fosters them. There is no inconsistency in holding that, although one who enters into a contract with intent to defraud his creditors is, by statute, declared guilty of a misdemeanor, under certain circumstances the law will allow a civil judgment to be taken against him which would further the same public policy that the legislation was designed to sanction. Under the non-enforceability doctrine, a debtor who enters into a contract in fraud of creditors faces, at the worst, their prior rights to subject his property to his debts and conviction of a misdemeanor. But the contract rule, allowing it to be enforced by a third person against the debtor, subject, of course, to the rights of

creditors, provides an additional, practical, and effective restraint against entering into an agreement of that kind. In the present case, as in most of such contracts, the consideration given for the right to purchase the property of the debtor is much less than its value, otherwise the very purpose of the agreement would be thwarted. Certainly a debtor would hesitate to make such a contract if the other party might enforce it against him.

The reasons for allowing enforcement as between the parties to the contract are stated in *Carpenter* v. *McClure, supra:* "If fraud enters into the trade or gift, it is in the power of the person against whom the fraud is pointed to avoid the trade or gift. The injury is pointed, not at the public, nor at an unascertained portion of the public, but at the fixed rights of persons certain to whom the common law affords protection, and into whose hands the statute gives the right to inflict punishment. That the contract is made void as to creditors only has been thought to add to his protection, and to be calculated to restrain such transactions. The colorable contract can only be avoided by the creditor's aid, and without it a dishonest debtor places himself in the power of his confederate, whose exactions are not unusually more severe than a creditor's . . ." (91 Am.Dec. 374.)

But another rule generally followed is that a contract in fraud of creditors will be enforced between the parties if the plaintiff was less at fault than the defendant. (*Watson* v. *Poore,* 18 Cal.2d 302 [115 P.2d 478] ; *Woodham* v. *Allen,* 130 Cal. 194 [62 P. 398] ; *Ager* v. *Duncan, supra; Ford* v. *Caspers,* 128 F.2d 884; *Felder* v. *Paulk,* 165 Ga. 135 [139 S.E. 873] ; *Gay* v. *Gibson,* 101 W. Va. 284 [132 S.E. 717] ; see 6 Williston, Contracts, rev. ed., §§ 1739, 1754, pp. 4919, 4985; Restatement, Contracts, §§ 602, 604; 37 C.J.S. 1095, 1104; 6 Cal.Jur. 157.) And mere knowledge by both of them of the purpose of the contract does not of itself establish that they are *in pari delicto.*

In *McAllister* v. *Drapeau,* 14 Cal.2d 102, 112 [92 P.2d 911, 125 A.L.R. 800], it was said: "It is, of course, true that where parties are *in pari delicto* neither can secure affirmative relief at law or equity. But it is equally true that where one party is involved to some extent in the illegality, but where the second party is grievously at fault and the first party only slightly at fault the court will allow recovery of moneys paid by the first party under the executory contract. . . . The

exception and limitation to the main rule is stated in 1 Pomeroy's Equity Jurisprudence, section 403, p. 756, as follows:

" 'The first of these limitations may be given in the following general formula, and all the others may be regarded as merely particular deductions or corollaries from it. Assuming that a contract is fraudulent, or against public policy, or illegal, still, where the parties to it are not *in pari delicto,* and where public policy is considered as advanced by allowing either, or at least the most excusable of the two, to sue for relief, relief may be given to him, either against the transaction by setting it aside and restoring him to his original position, or even, in some cases, by enforcing the contract, if executory.' "

The *in pari delicto* doctrine was recently considered by this court in connection with a question which concerned the establishment of a resulting trust because of fraud. The rule was stated as follows: "Although Watson's conduct was far from exemplary, we do not believe that under these circumstances it can be said that Poore and Watson were equally at fault. In the case of *Birney* v. *Birney,* 217 Cal. 353, 359 [18 P.2d 672], this court said: '. . . The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom advantage is taken. Though a deed made for an improper purpose is unfairly procured through the undue influence of the grantee, in violation of a fiduciary relationship, abuse of confidence, oppression or fraud, a court of equity will still grant relief to one in fault. Such relief will not be denied to a party least in fault against one who has led him into the act by a violation of confidence. They are not in equal wrong. . . .' " (*Watson* v. *Poore, supra* [18 Cal.2d 302, 312].) And Williston states that "the buyer's right to enforce an executory bargain where the seller intended to defraud his creditors should be governed by the principles applied to other cases of bargains where the plaintiff has guilty knowledge. . . . It is held in England that mere knowledge of an illegal purpose of the other party to the transaction will render a bargain so opposed to public policy that no recovery can be had upon it. . . . But the weight of authority in the United States does not support so strict a rule at least, 'unless the intended purpose involves serious moral turpitude, or unless a statute prohibits recovery.' " (6 Williston, Contracts, rev. ed., §§ 1739, 1754, pp. 4919, 4985.)

The making of a contract for the purpose of defrauding creditors, it is clear from these authorities, does not, in and of itself, establish that both parties to the agreement are *in pari delicto*. If the offense of the plaintiff is trivial in comparison with that of the party whose conduct is much more wrongful, the fraudulent purpose will not bar a recovery. And equal fault may not properly be charged where there is oppression on one side and submission on the other. (*Woodham* v. *Allen, supra,* p. 199; see 6 Cal.Jur., Contracts, § 109.) Also, the plaintiff should not be required to anticipate the defense of illegality and plead that the parties were not *in pari delicto*. Illegality is an affirmative defense that must be specially pleaded. (*Bernstein* v. *Downs,* 112 Cal. 197 [44 P. 557]; see 1 Bancroft's Code Pleading, § 336; 21 Cal.Jur. 138.) Moreover, the failure of Severance to plead "that he acted under the influence of the respondent's president," is of no consequence. Upon the trial the parties treated this affirmative defense as being sufficiently pleaded and it will be so considered upon appeal (*Busch* v. *Los Angeles Ry. Co.,* 178 Cal. 536 [174 P. 665; 2 A.L.R. 1607]; *Sukeforth* v. *Lord,* 87 Cal. 399 [25 P. 497]; *Thomas* v. *Black,* 84 Cal. 221 [23 P. 1037]; *King* v. *Davis,* 34 Cal. 100.)

It is settled law in California that where an action is tried before the court without a jury, in the absence of a waiver, findings are required upon all material issues presented by the pleadings and the evidence. If the court renders judgment without making such findings, the judgment must be reversed. (*Fairchild* v. *Raines,* 24 Cal.2d 818, 830 [151 P.2d 260]; *James* v. *Haley,* 212 Cal. 142, 147 [297 P. 920]; *Wilcox* v. *Sway,* 69 Cal.App.2d 560, 564 [160 P.2d 154]; *Bertrand* v. *Pacific Electric Ry. Co.,* 46 Cal.App.2d 7, 13 [115 P.2d 228].) Although an appellate court may properly make findings to support the judgment when "no contrary conclusion from the evidence could reasonably be drawn" (*Tupman* v. *Haberkern,* 208 Cal. 256, 266, 267 [280 P. 970]; see Code Civ. Proc., § 956a; *Bertrand* v. *Pacific Electric Ry. Co., supra,* p. 12), the record now under review shows a substantial conflict in the testimony, requiring a finding or findings by the trier of fact.

The finding of the trial court in the present case that "said agreement was collusive and was drawn and signed by plaintiff and defendant for the purpose and with the intent to defraud creditors of defendant" does not determine the issue of *pari delicto*. Furthermore, the testimony of the respondent's presi-

dent, which must have been believed by the trial court since the judgment was in its favor, shows that Counihan conceived and initiated the plan to defraud the corporation's creditors. Severance, an employee, was induced by the president to enter into the contract in suit. Under such circumstances there is evidence which would support a determination that the parties were not equally at fault.

The record also shows a conflict of evidence upon the issue as to whether there was a condition specified by the parties for the taking effect of the contract and also in regard to the question as to a trust. No findings were made upon these issues and they may not now be made as the basis for denying Severance relief. Counihan insisted that the contract was to be effective only if the creditors took over the corporation's business or forced it into liquidation. When a witness in his own behalf, Severance was asked, "Now you say that the agreement was that you could come the next day if you wanted to and take the pages with you for the value of the metal, is that right?" He replied, "That is right." According to Severance, nothing was said to the effect "that the agreements were only to be effective if the creditors should take over the company." Severance's testimony likewise negatived a trust relationship.

Nor should we assume that the omitted findings, if made, would have been adverse to the plaintiff. (See *Krum* v. *Malloy*, 22 Cal.2d 132, 136 [137 P.2d 18].) The majority opinion reads an implied finding of a condition precedent into the express one that the agreement, based upon an inadequate and unfair consideration, was made for the purpose of defrauding creditors. But, in my opinion, the findings of the trial court do not include any determination as to the very important issue in regard to the condition precedent upon which the contract's effectiveness depends.

The failure to so find necessarily raises other questions. Had the trial court decided that there was no condition precedent, it should have determined whether the creditors, contrary to Counihan's testimony, would be prejudiced by the enforcement of the contract and the time or conditions upon which the parties intended title to the plates to pass. The finding that the consideration was wholly inadequate and unfair is not controlling. Although the adequacy or amount of consideration may be a circumstance which, together with other facts, will tend to show fraud or undue influence, and must be

pleaded and proved by a plaintiff in an action for specific performance, there was evidence that the consideration for the right to buy the plates was, as specifically stated in the contract, the value of Severance's services. That consideration was sufficient to support the contract and an action for its breach.

For these reasons, I believe that the judgment should be reversed.

CARTER, J.—I dissent. I am in substantial accord with the view set forth in the dissenting opinion of Mr. Justice Edmonds in this case.

Judicial conscience should revolt against the concept that a valid defense may be predicated upon a fraud perpetrated by the defendant asserting it. Especially should this be true in a case where the fraudulent scheme was conceived and proposed by such defendant for his own benefit and advantage. Such is the situation we are confronted with in this case. That is, the defendant comes into court and boldly asserts, that with the intent and design to defraud his creditors by withholding from them a valuable asset to which they might resort for the satisfaction of their claims against him, he proposed to plaintiff that a fraudulent deal be arranged whereby plaintiff would appear to have a valid contract for the purchase of this valuable asset for a nominal purchase price which would be paid by defendant if the creditors saw fit to force the collection of their claims, and the asset would thereafter be retained by defendant for his own use, benefit and advantage. To carry out this fraudulent design, the defendant had a purportedly valid written contract prepared and executed by himself and the plaintiff. When plaintiff attempted to enforce said contract, defendant's sole defense was that it was entered into for the fraudulent purpose of hindering, delaying and defrauding his creditors and was therefore invalid and unenforceable even as between the parties themselves. In my opinion there are compelling reasons which support the view that as between the parties the contract is valid and enforceable. These reasons are ably stated as follows in the dissenting opinion which was written by Mr. Presiding Justice Peters of the District Court of Appeal, First Appellate District, Division One, when this cause was before that court:

"There is another factor that compels the conclusion that such contracts should be enforceable by the third person. Public policy requires that contracts in fraud of creditors should be discouraged. The rule of the majority opinion encourages such contracts. Under that rule a fraudulent debtor can enter into a contract in fraud of his creditors knowing that the worst that can happen to him is, that if the creditors discover the fraud, they can reach the property—a right they would have had had the contract not been executed. Under the rule announced by the majority the third person cannot enforce that contract so that no penalty at all is exacted, no restraint at all is placed upon, the fraudulent debtor. But if such contracts could be enforced by the third person a real restraint against such contracts would exist. Any fraudulent debtor would hesitate before entering into such a contract if the third person could enforce it. It follows that, even if the parties were *in pari delicto* (which they are not), the public policy in favor of preventing such contracts being much stronger than the policy that the judicial hands should not be tainted by enforcing them, the first policy must prevail."

I take issue with the statement in the majority opinion that the contract is rendered void by the fact that the parties to it are subject to punishment under the penal statutes (Pen. Code, §§ 531, 154, 155). Sections 154 and 155 refer only to acts of the debtor and contain no provision which might be construed to defeat any right of plaintiff. Section 531 in effect provides that every party to any contract made "with intent" to defeat, hinder, or delay creditors is guilty of a misdemeanor.

The majority opinion correctly states that a contract must have a lawful object, and that as a general rule "where a statute prohibits or attaches a penalty to the doing of an act, the act is void, and this, notwithstanding that the statute does not expressly pronounce it so, and it is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum*" (citing *Smith* v. *Bach,* 183 Cal. 259, 262 [191 P. 14], and other cases.) But in holding that this rule is here applicable, the opinion fails to discuss the many exceptions to it which have been declared by the courts, and fails to give weight to the controlling fact that the exception, and not the general rule, should prevail where the effect of application of the general rule is to encourage the making of the type of illegal contract under review.

The question is largely one of legislative intent, and in order to determine whether the penal provision was intended by the Legislature to render agreements violative of it illegal, the purpose of the statute has been generally adopted as a test (12 Am.Jur., § 163, p. 658). The penal statutes above referred to were obviously enacted solely for the protection of creditors, and they apply only where a transaction is entered into with a disclosed or undisclosed intent to defraud that class of persons. Their terms indicate that their purpose may be more successfully accomplished by not declaring illegal as between the parties, contracts violative of their provisions.

A contract, denominated by the majority opinion as void because its ''object'' is prohibited by penal law, should be distinguished from a contract, such as the present one, having an ''object'' which is unqualifiedly lawful but which is executed with the unstated intent to secure an unlawful advantage over persons not parties to it. The obviously lawful ''object'' of the present contract was to effect a purchase and sale of tariff plates at their metal value. Regardless of the undisclosed motive, or ''intent'' when that word is used in the sense of ''motive'' (see, discussion, *Hansen* v. *Bear Film Co.*, 28 Cal.2d 154, 175 [168 P.2d 946]), the ''object'' of the contract is not prohibited by penal law. Section 531 refers to an intent or motive to deceive and defraud others, not to an object so to do.

There is nothing in the statute which indicates a legislative intent to declare void and illegal as between the parties contracts having a lawful object but motivated by design to defraud creditors. The statute has never been before the courts for construction on this point (see *Sasaki* v. *Kai*, 56 Cal.App. 2d 406 [133 P.2d 18]). The compelling reasons already set forth constrain me to conclude that the effect of the penal provision is not to render totally void as between the parties, contracts in fraud of creditors.

It is said in *Reconstruction Finance Corp.* v. *Central Republic T. Co.*, 17 F.Supp. 263, 298, ''Each statute must be judged by itself as a whole, regard being had, not only to its language, but to the objects and purposes for which it was enacted. If the statute does not declare a contract made in violation of it to be void, and if it is not necessary to hold the contract void in order to accomplish the purpose of the statute, the inference is that it was intended to be directory, and not prohibitory of the contract. . . .'' Such is the case here.

In my view, the judgment should be reversed.

SCHAUER, J.—I dissent. I am in accord generally with the propositions of law declared by Mr. Justice Edmonds and by Mr. Justice Carter in their respective dissenting opinions and I agree that the majority opinion is unsound in law and in public policy as pointed out by Justices Edmonds and Carter. I am further of the view that the majority opinion is untenable on any fair and realistic appraisal of the evidence and the findings of fact.

The evidence overwhelmingly and without substantial dispute establishes that there was ample consideration for the contract, that no creditor was injured by it, and that the corporation defendant, which the majority opinion supports in invoking its own weakly asserted intent to defraud as a basis for excusing its failure to perform the contract, was in fact at all times solvent.

The major issue of fact in the case was on the point as to whether the contract was in fact *delivered* as an actual contract or was merely signed for possible future use dependent upon a condition precedent which had not then, and which defendant asserts never has, occurred. Upon this all-important question the trial court failed to make any finding.

For each and all of the reasons indicated the judgment should be reversed.