[Civ. No. 10785. Third Dist. Jan. 7, 1965.]

DONALD FRANCIS HAINES, Plaintiff and Appellant, v. WILLIAM F. BECHDOLT et al., Defendants and Respondents.

Lempres & Seyranian and Leon G. Seyranian for Plaintiff and Appellant.

John R. Couzens for Defendants and Respondents.

PIERCE, P. J.—Plaintiff appeals from the trial court's judgment for defendants in his action for architectural services. There was a written instrument signed between the parties for the design by plaintiff of a motel addition to defendants' Tahoe Inn. Plaintiff sued on this contract but also sued on a *quantum meruit* for the value of services performed and upon an account stated. A defense raised by defendants was that there had been a collateral oral contract entered into between the parties under which it had been agreed ''that plaintiff would assist in the obtaining of needed financing for the improvements . . . and that payment to plaintiff was to be required only from funds received from such financing; that plaintiff did not assist in the obtaining of financing and financing was not obtained.'' The court found those allegations to be true. On the basis of that finding it concluded plaintiff was not entitled to any recovery on his count based upon the reasonable value of services performed. It held that there could be no recovery on an account stated because whatever debt had been incurred was under an express contract. Regarding the count based upon the express contract, however, it held that the evidence of the oral contract could not be considered because of the parol evidence rule. (Thus in the same action and upon the same facts the court both received and rejected evidence of the oral contract.) Turning then to the written contract, the court gave consideration to a pro-

vision therein that upon an abandonment of the contract the architect was to be paid for his services. It found this provision to be ambiguous regarding the basis of payment and held that the reasonable value for services performed *under the written contract* should be the measure of recovery. This amount the court fixed at $5,000. Since defendants had already paid $5,000 to plaintiff, judgment was for defendants.

The contentions of plaintiff on appeal are that (1) there was no substantial evidence to justify the court's fixing of the value of his services at $5,000; also that (2) the court erred in denying plaintiff's cause of action on a *quantum meruit.* We hold that these contentions must be sustained—but we cannot apply either the court's theory or appellant's to the facts found by the court, and in reversing we reach a result quite different from that postulated by either.

First, there is substantial evidence to support the existence of an oral contract, one which did not vary the terms of the written instrument signed by the parties but which fixed a condition precedent to its effectivity—a condition which never was met. The written contract, therefore, never took effect.

Even when a written contract is complete and signed it may be shown that the parties agreed that it would not be binding until the happening of some future event, a condition precedent, and this can be shown by parol evidence, unless the written contract includes express provisions inconsistent with the condition. (*Severance* v. *Knight-Counihan Co.,* 29 Cal.2d 561, 563 [177 P.2d 4, 172 A.L.R. 1107]; *Fontana* v. *Upp,* 128 Cal.App.2d 205 [275 P.2d 164]; 4 Williston, Contracts (3rd ed.) § 634, p. 1023. This rule has been applied in California to an architect's contract (conditioned upon title to property being obtained) (*Gleeson* v. *Dunn,* 113 Cal.App. 347 [298 P. 119]) and to a building contract conditioned upon the owner's ability to obtain financing (*Paratore* v. *Scharetg,* 53 Cal.App.2d 710 [128 P.2d 560]); and to a contract to purchase realty conditioned upon the purchaser's ability to obtain financing (*Campbell* v. *Taylor,* 189 Cal.App. 2d 236 [11 Cal.Rptr. 271]).

The written contract here contained the following provision: ''If any work designed or specified by the Architect is abandoned or suspended, in whole or in part, the Architect is to be paid for the service rendered on account of it.'' This provision is not inconsistent with the condition precedent stated above. It is a provision for payment of services ren-

dered after the commencement of the contract and which terminates it upon the happening of a condition subsequent. (See *Fontana* v. *Upp, supra,* 128 Cal.App.2d 205, 208.)

Here the testimony as to the oral agreement of the parties containing the condition precedent—defendants' ability to obtain financing—was conflicting. Elmer Larson, plaintiff's partner and admittedly his agent authorized to negotiate the contract, testified that the contract was signed on or about September 6, 1956, at the office of defendants' attorney, Mr. Couzens, after the latter had approved it as ''equitable.'' According to Larson, he and the Bechdolts, Carl and William (father and son), had then gone to the latter's banker who had told them ''in his opinion there would be no problem of financing, what they would need would be the necessary plans, the layout showing what they were planning on building, and up-to-date financial statements.'' This was materially different from the version of defendants' witnesses. William Bechdolt testified the contract was not signed until a month or more after the meeting at the lawyer's office and that the meeting at that office had been primarily to arrange for the transfer of the Tahoe Inn from his father to himself. Mr. Couzens testified that he had never even seen the written contract until a year and a half later (April of 1958) and had never given it his approval. Harry Rosenberry, the banker, remembered the conversation at the bank, denied any commitment to finance the project, stated that he had told William Bechdolt (Carl Bechdolt not being present) not to make any commitments to incur expense for architectural services until he had obtained financing since he had been having difficulty ''making the present payments'' on the deed of trust on his property. Bechdolt had promised he would follow this advice. All of this happened in Larson's presence.

Bechdolt, Sr., a man of advanced years, was unable to be present at the trial. His deposition was read. According to him, before the contract was signed Bechdolt had told Larson he had talked with people willing to put up money but had not obtained a commitment in an amount sufficient to go ahead with the deal. Larson told him the proposed improvements could easily be financed, that ''We can help you finance it,'' to which Bechdolt replied, ''If you can't help finance it, it's no good, that is a cinch.'' He also had said, ''If we don't use the plans, we don't pay nothing.'' The testimony of William Bechdolt was similar to his father's. He said: ''At the time we signed, or prior to when we signed the contract, when we

were considering it, Mr. Larson said that we didn't have to worry about the fees until we got the complete financing. Or partial financing.'' He also testified that payment of the architect ''would come out of the financing if we got it.'' The signing of the contract had taken place at Lake Tahoe. Plaintiff never obtained financing of the project and the Bechdolts were not able to obtain financing otherwise.

After the signing of the contract plaintiff commenced the preparation of preliminary plans. The work did not stop at that stage, however. He also commenced the preparation of working drawings, and this notwithstanding the fact that he was aware that the financing of the project had not been obtained. These plans were never used and the improvements were never built. Two years later (in 1959) defendant William Bechdolt abandoned the project, entered into a ground lease with TraveLodge which built on the premises, using its own financing and its own plans.

On the basis of the foregoing there was substantial evidence to support the trial court's finding that an oral contract existed between the parties. Its legal effect was not that found by the trial court. It conditioned the binding effect of the written agreement upon the happening of an event which never occurred—the financing of the project. It did not, as the trial court found, vary the terms of the written contract. Where does that leave the parties?

If, as the court construed the oral agreement, the plaintiff-architect was only to be paid out of funds obtained from a financing of the project, then plaintiff should have been paid nothing. But if that was the original oral agreement, it was certainly not the one the parties acted upon. In the spring of 1957, while William Bechdolt was still seeking financing, plaintiff commenced to bill him for services rendered. In letters written by Bechdolt to Haines there was no objection to this billing. There were in fact apologies for nonpayment and finally there was a payment of $5,000. Plaintiff cites these letters and this payment as proof that the written agreement was in effect and the claimed oral agreement nonexistent. When this same argument was made in the trial court, it was answered by the observation (in the memorandum opinion) ''said defendant William Bechdolt was obviously proceeding in the anticipation that financial backing would be forthcoming, and that the motel would be built and that plaintiff's plans and specifications used.'' That may have been so but on the other hand that reasoning overlooks the fact that it

had been defendants' contention (and the trial court's finding) that payment for these architectural services was to have been made only *out of funds obtained from financing*. In our own study of the record a letter written by William Bechdolt to Larson on April 30, 1958, seems rather conclusively to interpret the oral understanding of the parties as it was ultimately acted upon. This letter, in evidence as plaintiff's exhibit No. 4-d, stated that a previous telephone conversation ''has been a bit misinterpreted by you. I told you that I would do my utmost to make a payment as soon as possible, but no agreement was reached *on any stated amount*.'' (Italics supplied.) Bechdolt then calls Larson's attention to the latter's awareness that financing had not been obtained and the letter then says: ''It was our understanding, at the time the contract for your employment was made, that *I would be bound to it* only in the event I should be successful in obtaining the financing.'' (Italics supplied.) He then calls attention to the payment of $5,000 and states, '' Certainly it ought to be more than adequate compensation for what has been done by your office.'' He next states, ''I do not consider that you are justified in billing me on the basis of 'basic rate' provided by the contract as the contract specified that the 'basic rate' applies to work let under a contract. No contract has been let and in applying the 'basic rate' to an estimate, as you have done, you are going outside of the provisions of the contract, if the contract should be held to be binding upon me, regardless of what has been understood.'' The letter ends: ''I am proposing that we should hold up any further services on your part and any further payments on my part until all problems will be resolved by the money obtained through financing.''

As we read this letter it is the statement of an understanding that preliminary plans were to be paid for but at no ''stated amount,'' that the contract and the rates payable thereunder were not to be binding upon defendants unless and until financing had been obtained. This letter, together with the payment of $5,000, was a recognition that the Bechdolts were to be obligated for preliminary plans. They thought that $5,000 ''ought to be more than adequate compensation'' for the work done.

Added to the clear intendment of this letter and the payment is the further fact that at no time during the controversy, either before or during the litigation, *did defendants ever demand the repayment of the $5,000*. Obviously, if the agreement had been as they contend, defendants would have been

entitled to its recovery and would have made a cross-demand in their pleadings praying for its return.

As we view it, all of these circumstances cumulate to convince us that only one reasonable conclusion is possible —the Bechdolts intended to pay for *some* preliminary plans prepared. And when the evidence *is* such that only one inference can reasonably be drawn, it can and must be treated by a reviewing court as a question of law. (*State of California* v. *Superior Court*, 208 Cal.App.2d 659, 665 [25 Cal.Rptr. 363].) And when we reach that point it leaves the reasonable value of services performed as the proper measure of plaintiff's right to a recovery. The trial court fixed that value at $5,000. Regardless of the fact that it reached this result under an untenable theory of applicable law, we could nevertheless affirm if the sum fixed found support in competent and relevant evidence. But it does not.

Both plaintiff (as his own expert) and defendants' expert, Architect Barovetto, testified only to the reasonable value of services performed, considering such services as having been performed under the written contract and upon the assumption that it had been in existence up to the point of "abandonment." No evidence whatever was taken on the theory of compensating the architect for services properly and necessarily performed under the actual circumstances, i.e., with knowledge on the part of both parties, the architect and the owner, that financing had not been obtained and might not be, that the written contract had no existence until that condition had been met and that preliminary plans and cost estimates were to be prepared sufficient only to attract such financing.

The judgment must be and is reversed for further proceedings and retrial only upon the question of the reasonable value of the architect's services so performed, in accordance with the views herein expressed.

Friedman, J., and Van Dyke, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.